HOLLAND v TRINITY HEALTH CARE CORPORATION

Docket No. 280657. Submitted January 16, 2009, at Detroit. Decided
    March 16, 2010, at 9:00 a.m.

    Kellie Holland brought an action in the Oakland Circuit Court,
Michael Warren, J., against Trinity Health Care Corporation,
alleging that defendant wrongfully charged her for medical ser-
vices provided by defendant's hospital. Plaintiff, who does not have
health insurance, executed an agreement to pay defendant's
"usual and customary charges," but alleged that the usual and
customary charges she agreed to pay meant the discounted pay-
ments that defendant accepts from health insurers and other
third-party payors rather than the price stated in defendant's
"Charge Master," which are higher than the discounted prices
charged to insured patients. The trial court granted summary
disposition in favor of defendant, holding that the phrase "usual
and customary charges" referred to the Charge Master prices.
Plaintiff appealed.

    The Court of Appeals held:

    1. Plaintiff, in contending that the phrase "usual and custom-
ary charges" is ambiguous, failed to establish that the term
conflicts with another term in the agreement. Therefore, to the
extent that plaintiff failed to identify terms that allegedly conflict
with one another, her contention that the "conflicting terms" form
of contract ambiguity exists must be rejected.

    2. The trial court properly held that the phrase "usual and
customary charges" unambiguously refers to the "Charge Master"
prices.

    3. The trial court did not utilize extrinsic evidence when it
relied on the pleadings to show that plaintiff conceded that there
is a difference between the charges maintained in the Charge
Master and the discount payments that defendant accepted under
a variety of circumstances.

    4. The trial court did not rely on the no-fault motor vehicle
insurance act, MCL 500.3101 et seq., in interpreting the parties'
financial agreement.

    Affirmed.

*Bendure & Thomas* (by *Mark R. Bendure*) and *Cohen & Malad, LLP* (by *Richard E. Shevitz, Arend J. Abel, Vess A. Miller*, and *Gabriel A. Hawkins*), for plaintiff.

*Honigman Miller Schwartz and Cohn LLP* (by *Raymond W. Henney, Robert M. Jackson*, and *Douglas C. Salzenstein*) and *McDermott Will & Emery LLP* (by *David S. Rosenbloom* and *Jocelyn D. Francoeur*) for defendant.

Before: FORT HOOD, P.J., and WILDER and BORRELLO, JJ.

WILDER, J. Plaintiff appeals as of right an order granting summary disposition to defendant in this dispute over "usual and customary charges" for medical care given to an uninsured patient. The trial court held that the "usual and customary charges" language of the parties' agreement was unambiguous and referred to the prices stated in defendant's "Charge Master," which are higher than the discounted prices charged to insured patients. We agree with the trial court, and therefore affirm.

Defendant is a nonprofit corporation that owns and operates hospitals, including the Saint Joseph Regional Medical Center, in Plymouth, Indiana. On December 1, 2005, plaintiff went to that hospital for medical care, and was admitted for treatment of a kidney stone. But plaintiff was uninsured, so she executed an agreement with the hospital, in which she promised to pay "for all services rendered to me at the Medical Center's *usual and customary charges* . . . ." (Emphasis added.) Defendant and its agents discharged their duties under the agreement, by providing medical services to treat plaintiff's ailment. Then, defendant billed plaintiff for the services. But plaintiff refused to pay the charges billed,

and instead commenced this action, alleging, *inter alia,* that the "usual and customary charges" she promised to pay meant the discounted payments defendant accepts from health insurers and other third-party payors, for a majority of its patients, rather than the prices stated in defendant's "Charge Master." The Charge Master is an index of undiscounted charges defendant uses for its health care services to patients.

On appeal, plaintiff argues that the court erred by determining that the phrase "usual and customary charges" referred to the prices listed in defendant's Charge Master, rather than the discounted payments that defendant accepts for insured patients.[1] We disagree.

This Court reviews de novo summary disposition rulings. *Willett v Waterford Charter Twp,* 271 Mich App 38, 45; 718 NW2d 386 (2006). A written contract's interpretation is also reviewed de novo. *Coates v Bastian Bros, Inc,* 276 Mich App 498, 503; 741 NW2d 539 (2007). Whether contractual terms are ambiguous is a question of law, and this Court reviews de novo the proper interpretation of a contract. *Able Demolition, Inc v City of Pontiac,* 275 Mich App 577, 581; 739 NW2d 696 (2007).

Our Supreme Court's contracts jurisprudence emphasizes the well-defined role of courts in contract disputes: viz., *courts enforce unambiguous contract terms. Quality Prod & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 375; 666 NW2d 251 (2003). We enforce contracts according to their terms, as a corollary of the parties' liberty of contracting. *Rory v Conti-*

---

[1] Plaintiff failed to raise her "good faith and fair dealing" claims on appeal, and has therefore abandoned those issues. *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 471; 628 NW2d 577 (2001). We express no opinion on whether claims of breaches of duties of good faith and fair dealing legally state claims on which relief can be granted.

*nental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). We examine written contractual language, and give the words their plain and ordinary meanings. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). An unambiguous contractual provision reflects the parties' intent as a matter of law, and "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Prod & Concepts Co*, 469 Mich at 375. Moreover, courts may not impose an ambiguity on clear contract language, *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005), because Michigan courts honor parties' bargains and do not rewrite them, *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008); see also *Coates*, 276 Mich App at 511 n 7. For instance, courts generally may not attempt to evaluate whether a contract is one of "adhesion." See *Rory*, 473 Mich at 477. "An 'adhesion contract' is simply that: a *contract.* It must be enforced according to its plain terms unless one of the traditional contract defenses applies." *Id.*

On the other hand, a contract is ambiguous when two provisions "irreconcilably conflict with each other," or "when [a term] is equally susceptible to more than a single meaning," *Coates*, 276 Mich App at 503 (quotation marks and citations omitted). Only when contractual language is ambiguous does its meaning become a question of fact. *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). The ancient common-law rule of *contra proferentem* (an agreement is construed against its drafter) is used only when there is a true ambiguity, and the parties' intent cannot be discerned through all conventional means, including extrinsic evidence. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470-471; 663 NW2d 447 (2003). Courts may consult dictionary definitions to

ascertain the plain and ordinary meaning of terms undefined in an agreement. *Coates*, 276 Mich App at 504. "Resort to dictionary definitions is acceptable and useful in determining ordinary meaning." *Cowles v Bank West*, 476 Mich 1, 34; 719 NW2d 94 (2006) (quotation marks and citation omitted).

In challenging the trial court's grant of summary disposition below, plaintiff contends that the phrase "usual and customary charges" is equally susceptible to more than a single meaning. *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004). Plaintiff argues that "usual and customary charges" might mean *either* (1) the prices in the Charge Master, or (2) the discounted prices charged to insured patients. We disagree. We first note that in contending that the phrase "usual and customary charges" is ambiguous, plaintiff does not establish that this term conflicts with another term in the contract. Thus, to the extent that plaintiff does not identify terms that allegedly conflict with one another, we reject the proposition that the "conflicting terms" form of ambiguity exists.

Next, we note that plaintiff is in partial agreement with defendant on the application of the phrase usual and customary—namely, that plaintiff "promised to pay . . . [defendant's] usual and customary *charges*" (emphasis supplied) for services rendered to her. Black's Law Dictionary (8th ed) defines "charge" as "[t]o demand a fee; to bill." Thus, plaintiff's claim does not hinge on the amount *charged* her; rather, plaintiff asserts that the phrase "usual and customary charges" reasonably refers to the amount defendant accepts as payment from the majority of its patients. Because it was undisputed that the amount defendant charged plaintiff was based on defendant's "Charge Master," resolution of this issue depends upon whether the

phrase "usual and customary charges" reasonably references the "Charge Master."

Because Michigan caselaw does not directly address this issue in the context at hand, both parties cite the Nebraska Supreme Court decision in *Midwest Neurosurgery, PC v State Farm Ins Cos*, 268 Neb 642; 686 NW2d 572 (2004), in support of their positions.[2] At issue in *Midwest Neurosurgery* was whether a physician's lien could "exceed the amount the health care provider agreed to accept for the services rendered to a patient, even if the usual and customary charge for such services is greater than that sum" under Nebraska's physician's lien statute. *Id*. at 647 (quotation marks and citation omitted). While ruling that the lien statute provided that the lien did not extend to the full amount due for "usual and customary charges," the Nebraska Supreme Court explained that "usual and customary charges" referred to the amount the "provider typically charges other patients for the services that it provided to the injured party." *Id*. at 650. No reference, however, was made linking "usual and customary charges" to discounted payments—i.e., that to which plaintiff contends "usual and customary charges" refers. Thus, *Midwest Neurosurgery* does not support plaintiff's position.

In any event, *DiCarlo v St Mary Hosp*, 530 F3d 255, 260 (CA 3, 2008),[3] contains a factual situation analogous to the instant case and is directly on point.[4] In *DiCarlo*, when the defendant hospital charged the un-

---

[2] Cases from other jurisdictions, although not binding, may be persuasive. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

[3] Because the *DiCarlo* court adopted the lower court's opinion as its own, subsequent citation to this case will be to the lower court's opinion. *DiCarlo*, 530 F3d at 260.

[4] Opinions of lower federal courts, although not binding, may be considered persuasive authority. *Walters v Nadell*, 481 Mich 377, 390 n 32; 751 NW2d 431 (2008).

insured plaintiff for medical services in accordance with its "Charge Master" price index, the plaintiff brought a class action suit against the defendant alleging, *inter alia*, breach of contract for the defendant's failure to bill an amount consistent with the discounted prices the defendant accepted from other patients. *DiCarlo v St Mary's Hosp*, 2006 US Dist LEXIS 49000 (2006), unpublished opinion of the United States District Court for the District of New Jersey, issued July 19, 2006 (Docket No. 05-1665). In finding that the term "all charges" unambiguously referred to the defendant's "Charge Master," the Court explained:

> While Plaintiff's contentions have facial persuasiveness, they fail to take into account the peculiar circumstances of hospitals, such as St. Mary's, and the bearing these circumstances have upon the interpretation of contracts between a patient and the hospital. St. Mary's has a uniform set of charges (casually known as the "Chargemaster") that it applies to all patients, without regard to whether the patient is insured, uninsured, or a government program beneficiary. As Plaintiff in his complaint and in his briefs recites, St. Mary's accepts a variety of discounted payments in different situations. It negotiates differing discounts with some managed care payors and insurance companies. It accepts discounted payments if the patient is covered by a government program that legislatively imposes discounts. It has provided discounts to uninsured patients based on demonstrated financial need pursuant to its Charity Care policy . . . .
>
>         * * *
>
> The price term "all charges" is certainly less precise than [the] price term of the ordinary contract for goods or services in that it does not specify an exact amount to be paid. It is, however, the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what

ails him or her. Besides handing the patient an inches-high stack of papers detailing the hospital's charges for each and every conceivable service, which he or she could not possibly read and understand before agreeing to treatment, the form contract employed by St. Mary's is the only way to communicate to a patient the nature of his or her financial obligations to the hospital. Furthermore, "it is incongruous to assert that [a hospital] breached the contract by fully performing its obligation to provide medical treatment to the plaintiff[] and then sending [him] [an] invoice[] for charges not covered by insurance." *Burton v. Beaumont Hosp.*, 373 F. Supp. 2d 707, 719 (E.D. Mich. 2005). [*Id.* at *9-*12.]

The instant case is nearly identical to *DiCarlo*. In both cases, the parties executed financial agreements not explicitly referencing the "Charge Master." Similarly, the defendants in both cases accepted discounted payments of which the plaintiffs in both cases were unaware and offered discounts to patients demonstrating financial need. *DiCarlo, supra.* Although plaintiff contends that *DiCarlo* is distinguishable because that case employed the phrase "all charges" as opposed to the phrase "usual and customary charge" as used in the financial agreement, this appears to be a distinction without a difference given the similar context of the financial agreements executed in both cases. Also, even though plaintiff asserts that *DiCarlo* is distinguishable because plaintiff does not dispute that the financial agreement at issue contains an open price term, recourse to *DiCarlo* is appropriate because it addresses the central issue of this case—namely whether the phrase "usual and customary charge" reasonably refers to the "Charge Master." Indeed, the crux of *DiCarlo*'s holding was that the defendant hospital properly utilized the "Charge Master" to uniformly charge all patients despite its acceptance of discounted payments. Plaintiff concedes that while defendant maintains

"standard or master charges," it negotiates discounted payments that are lower than the amount the patients are charged. Consequently, given these similarities, we conclude that the trial court properly held that the phrase "usual and customary charges" unambiguously refers to the "Charge Master."[5]

Although plaintiff asserts that the trial court improperly examined the pleadings in making this determination, the court relied on the pleadings to show that plaintiff conceded a difference between the charges maintained in the "Charge Master" and the "discount payments" that defendant accepted under a variety of circumstances. This was not a utilization of extrinsic evidence. Rather, the court's point was that the pleadings undercut plaintiff's argument that the phrase "usual and customary charges" referred to the "discount payments" accepted by defendant.

Plaintiff asserts that in addition to *Midwest Neurosurgery*, caselaw from other jurisdictions supports her argument that "usual and customary charges" did not reasonably refer to the "Charge Master." However, all the cited cases are distinguishable from the instant case.

First, the Tennessee Supreme Court found in *Doe v HCA Health Servs of Tennessee, Inc*, 46 SW3d 191, 194, 197 (Tenn, 2001), that the defendant hospital's confidential "Charge Master" was insufficient to determine the plaintiff's charges where the form contract only indicated that the plaintiff was responsible for "charges

---

[5] Because the financial agreement was unambiguous, plaintiff's alternative argument that the Court must construe ambiguities against the drafter is irrelevant. Also, contrary to plaintiff's argument, the court did not address the concluding phrase of the agreement requiring plaintiff to pay for services not covered by insurance, Medicare, or Medicaid. Regardless, that portion of the agreement is irrelevant to interpretation of the phrase "usual and customary charges."

not covered" under her insurance policy. The court held that without reference to the "Charge Master," the defendant hospital's charges were indefinite. *Id.* at 197. Here, however, there is no issue regarding whether the charges were indefinite. On the contrary, plaintiff conceded that patients' expectations are reasonably based on defendant's "Standard Charges" (i.e., "Charge Master"). Thus, *Doe* is distinguishable from this case.

Next, plaintiff cites *Anonymous v Monarch Life Ins Co*, 42 Misc 2d 308; 247 NYS2d 894 (NY Dist, 1964), a New York District Court case, in support of her argument. However, *Monarch Life Ins Co* pertained to the interpretation of "usual and customary charges" in an insurance policy rather than the price mechanism hospitals use to determine such charges at issue in this case. *Id.* at 896. Similarly, although defendant cites the Florida Court of Appeals finding in *Payne v Humana Hosp Orange Park*, 661 So 2d 1239, 1241 & n 2 (Fla App, 1995), that a reasonable price is implied in a contract where the contract fails to fix a price, the parties in that case disagreed on whether the defendant hospital's contract prices were set and ascertainable. In contrast, here, there is no issue pertaining to whether defendant's charges are ascertainable. *Servedio v Our Lady of the Resurrection Med Ctr*, unpublished memorandum opinion of the Illinois Circuit Court, issued January 6, 2005 (Docket No. 04 L 3381),[6] is also unavailing to plaintiff because even though the trial court in that case determined that the plaintiffs' assertion that the defendant hospital's acceptance of discounted payments created a *de facto* "usual and customary charge" sufficient to survive a motion for failure to state a claim on which relief could be granted, no

---

[6] This case is not available on Westlaw or Lexis, but is attached as Exhibit F to plaintiff's brief on appeal.

mention was made in that case of a uniform pricing mechanism, such as the "Charge Master."

Plaintiff further contends that the trial court's reliance on the Arizona Court of Appeals decision in *Banner Health v Med Savings Ins Co*, 216 Ariz 146, 148-151; 163 P3d 1096 (Ariz App, 2007), was misplaced. Plaintiff is wrong. In *Banner Health*, the Arizona Court of Appeals found that the phrase "usual and customary charges" did not constitute an open price term because the patient agreement specified that such charges referred to "those rates filed annually with the Arizona Department of Health Services." Despite the fact that defendant, here, was not required by law to file its "Charge Master" with the state, the issue in this case does not pertain to an open price term, and that case is also distinguishable. In any event, the trial court cited *Banner* merely to distinguish charges from discount payments. Therefore, this argument is meritless.

Plaintiff also argues that the trial court misconstrued the no-fault motor vehicle insurance act, MCL 500.3101 *et seq.*, in finding that Michigan's jurisprudence supported the conclusion that "usual and customary charges" unambiguously referenced the "Charge Master" rather than "discount payments." In making her argument, plaintiff contends that the no-fault act is not instructive because the statutory language in the no-fault act is different from, and therefore may not be applied to, the contractual language in the parties' financial agreement. Specifically at issue is MCL 500.3107(1)(a), requiring insurers to pay "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," and MCL 500.3157, requiring that health care charges be "reasonable" and not exceed the amount "customarily charge[d]" for similar services rendered to uninsured patients.

However, the court did not rely upon caselaw interpreting the no-fault act to apply the statutory provisions of the no-fault act to the contractual provision at issue in this case as plaintiff asserts. On the contrary, the court merely cited cases interpreting the no-fault act to demonstrate how Michigan caselaw has consistently found that discounted payments accepted by health care providers are irrelevant to the determination whether health care providers' charges are "customary" under § 3157. See *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 381-385; 554 NW2d 49 (1996) (finding that a "customary charge" under § 3157 of the no-fault act refers to the amount a health care provider charges rather than the amount accepted as payment), and *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 113; 535 NW2d 529 (1995) (rejecting the insurance provider's argument that the "customary charge" under § 3157 referred to the amount that an insurance provider paid for the services rather than the amount it was charged for the services).

*Johnson v Mich Mut Ins Co*, 180 Mich App 314; 446 NW2d 899 (1989), cited by plaintiff in support of her contention that the trial court misconstrued the no-fault act, actually undermines her position. In *Johnson*, this Court found that the no-fault insurer was required to pay the medical provider's "customary" charges rather than the discounted payment the provider was required to accept from Medicaid for those services. *Id.* at 321-322. Thus, under *Johnson*'s reasoning, the acceptance of discounted payments does not define a health care provider's "customary" charge. This is the fundamental argument defendant asserts in the case at hand.

In any event, the trial court did not rely upon the no-fault act in interpreting the financial agreement, but

merely noted that its reasoning was consistent with Michigan courts' interpretation of "customary" charges under the no-fault scheme. Thus, plaintiff's argument is without merit.[7] Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

Affirmed.

---

[7] We note that defendant contends that plaintiff received a 20 percent discount, and that this constitutes an additional reason to affirm the order granting summary disposition because the amount she paid was comparable to discounts available to defendant's insured patients. However, defendant presented no evidence as required to prevail under MCR 2.116(C)(10) concerning the actual amount of discounted payments it accepted from other patients. MCR 2.116(G)(3)(b); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Thus, this claim fails as insufficiently established to justify summary disposition under MCR 2.116 (C)(10).