# STATE OF MICHIGAN

# COURT OF APPEALS

INKSTER HOUSING COMMISSION,

   Plaintiff-Appellee,

v

TOWANA R. ALLEN,

   Defendant-Appellant.

UNPUBLISHED
January 20, 2015

No. 317507
Wayne Circuit Court
LC No. 13-000079-AV

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

In this landlord-tenant dispute, defendant, Towana R. Allen, appeals by leave granted[1] an order of the circuit court affirming the district court's judgment awarding possession of the premises at issue to plaintiff, Inkster Housing Commission. We reverse.

## I. FACTS AND PROCEDURAL HISTORY

Defendant entered into a lease with plaintiff for subsidized housing on August 1, 2012. This lease was for a three-bedroom unit, and listed three residents, defendant and her two grandchildren. On September 12, 2012, plaintiff served a notice to quit on defendant. The notice stated the following reasons for terminating the lease:

> Violation of dwelling lease agreement, see lease paragraph 8, tenant has intentionally misrepresented facts to determine eligibility for program assistance. Tenant is in direct violation of HUD's multi-subsidy policy. Tenant or household members [sic] rent is being subsidized by more than one rental assistance program.

The notice required defendant to vacate the premises by October 13, 2012, or face eviction. Defendant did not vacate the premises, and on October 17, 2012, plaintiff filed a complaint in the district court to terminate defendant's tenancy based on the same reason listed in the notice.

---

[1] *Inkster Housing Comm'n v Allen*, unpublished order of the Court of Appeals, entered January 10, 2014 (Docket No. 317507).

-1-

The district court held a bench trial. At the outset of the trial, plaintiff explained that it sought to evict defendant because she "was receiving a double subsidy."[2] According to plaintiff, defendant received a subsidy from plaintiff for her two grandchildren, of whom she had legal guardianship, and her daughter, Tiffany Allen ("Tiffany"), received a subsidy from the Detroit Housing Commission for the same two children. Plaintiff presented one witness, Scharre Leslie ("Leslie"), a cashier for plaintiff, who testified that both defendant and Tiffany were receiving housing subsidies for the same children. Plaintiff alleged that this situation violated defendant's lease as well as the Department of Housing and Urban Development's (HUD) multi-subsidy regulation, 24 CFR § 5.233. Defendant did not present any evidence or witnesses, but argued that she had legal custody of the children and that she had no control over what Tiffany reported to her housing authority.

The court ruled in favor of plaintiff, finding that there was "some misrepresentation," which violated defendant's lease. The court also seemingly held that plaintiff violated 24 CFR § 5.233. Defendant thereafter filed an appeal in the circuit court, arguing that the trial court erred by finding defendant made a misrepresentation, and by finding that defendant violated 24 CFR § 5.233. The circuit court denied plaintiff's appeal. Defendant filed an application for leave to appeal in this Court, and on January 10, 2014, this Court granted leave to appeal. This Court also granted Legal Services Association of Michigan's request to file an amicus curiae brief.[3]

## II. DISCUSSION[4]

---

[2] Throughout the trial and in plaintiff's brief on appeal, there were numerous uses of the term "double subsidy" and implications that defendant was receiving a "double subsidy." This terminology is inaccurate as applied to the current case. There was no evidence that defendant was receiving two subsidies herself; rather, the evidence showed that defendant and her daughter were each receiving a subsidy for the same children. Thus, "duplicate" is a more accurate description.

[3] *Inkster Housing Comm'n v Allen*, unpublished order of the Court of Appeals, entered October 1, 2013 (Docket No. 317507).

[4] Plaintiff contends that, because it succeeded in evicting defendant, defendant's appeal is now moot. "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. "As a general rule, an appellate court will not decide moot issues." *Id*. This Court may provide relief to defendant by reversing the judgment, and thus, the issue is not moot. See *id*. Further, an issue is not moot if it "may have collateral legal consequences" for a party. *Mead v Batchlor*, 435 Mich 480, 486; 460 NW2d 493 (1990), abrogated on other grounds *Turner v Rogers*, ___ US ___; 131 S Ct 2507; 180 L Ed 2d 452 (2011). As defendant notes, her eviction from public housing may well cause her to be unable to procure public housing in the future. See, e.g., 24 CFR § 982.552(c)(1)(*ii*) (allowing a public housing authority to deny assistance to an individual if "any member of the family has been evicted from federally assisted housing in the last five years[.]"). The appeal is not moot.

## A. MISREPRESENTATION

Defendant first argues that the district court clearly erred by making a factual finding that defendant made a misrepresentation. While we do not believe the district court's stated factual finding was clearly erroneous, the district court's conclusion that defendant violated paragraph eight of her lease was erroneous.

We review a trial court's findings of fact in a bench trial for clear error and review de novo its conclusions of law. *Chelsea Investment Group LLC v City of Chelsea,* 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* at 251. Underlying issues of contract interpretation are reviewed de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). When interpreting a contract, effect must be given to the contract's plain and unambiguous language. *Id.* at 61.

Plaintiff sought to terminate defendant's tenancy, alleging a violation of paragraph eight of the lease, which provides that a resident's "intentional misrepresentation [of] or willful failure" to notify management of certain information, such as a change in family income, family size, or other circumstance, is grounds to terminate the lease. In making its decision, the district court stated only that there was "some misrepresentation" that constituted a violation of the lease. When asked by defendant to explain its ruling, the district court stated, "all I know is that these children were receiving double subsidies, either by your hand or by [Tiffany]'s hand." Thus, the "misrepresentation" the court was referring to appears to be that someone, either defendant or Tiffany, misrepresented where the children resided. It was not disputed that both defendant and Tiffany represented that the children resided with them. Logically, the two children could not reside with both defendant and Tiffany at the same time. Thus, the district court's finding that "some misrepresentation" existed was supported by the evidence.

However, absent from the record is a factual finding that defendant was the individual making that misrepresentation. Plaintiff could only terminate the lease pursuant to paragraph eight if *defendant* made an intentional misrepresentation to plaintiff. Without a finding that defendant made the misrepresentation, the district court could not conclude defendant violated paragraph eight of the lease. Thus, while the district court's factual finding that someone made a misrepresentation was not clearly erroneous, its conclusion that this factual finding was sufficient to establish a breach of the lease was an error of law.

Moreover, even if we were to assume that the trial court found that defendant misrepresented where the children resided, such a finding would have been clearly erroneous. There is no evidence in the record regarding where the children were actually living. Leslie testified that she had no information regarding whether the children were living with defendant. The lease, executed on August 1, 2012, indicates that the children lived with defendant. Leslie stated that defendant provided paperwork showing that she was the legal guardian for the children, which led to plaintiff increasing defendant's apartment size to a three-bedroom unit. Leslie further testified that defendant informed plaintiff that she obtained guardianship because Tiffany intended on enlisting in the military. While Leslie also stated that, after receiving the notice to quit, defendant informed her that Tiffany changed her mind regarding entering the military, there was no evidence that the guardianship had already been terminated. This

evidence demonstrated only that the children did live with defendant and that she was their legal guardian. Accordingly, there was no evidence that would demonstrate that defendant misrepresented the children's residence to plaintiff.

Plaintiff argues that because duplicate subsidies existed there was evidence supporting a conclusion that defendant made a misrepresentation sufficient to warrant her eviction. The only evidence presented was that someone, either defendant or Tiffany, misrepresented who the children resided with, and that was the only conclusion the district court drew. There was no evidence, and more importantly, no factual finding by the court, that defendant was the person who misrepresented where the children resided.

Plaintiff also argues that defendant was required to notify plaintiff that Tiffany was receiving a subsidy for the children, and that defendant's knowledge that Tiffany was doing so may be inferred from the fact that defendant asked that the children be removed from her lease the day after plaintiff sent the notice to quit. Plaintiff's argument is flawed for a number of reasons. First, the district court never concluded that defendant was aware that Tiffany was also receiving a subsidy for the children. Quite the contrary, the district court indicated that it did not believe defendant had any knowledge of this fact. In response to defendant's explanation that she had no knowledge of what Tiffany had done, the court explained that it "*understood that*, but [defendant] need[ed] to make it [her] business to know that." Thus, the district court did not make a factual finding that defendant was aware of Tiffany's conduct.

Second, paragraph eight of the lease does not contain any duty to notify plaintiff that Tiffany was receiving a duplicate subsidy for the children. Paragraph eight of the lease explains that a resident has a duty to provide accurate information to defendant regarding family income, employment, and composition, as well as subsequent changes to income, family size, or other circumstances. Without explanation, plaintiff asserts that the district court's conclusion that "some misrepresentation" occurred was a reference to defendant's "failure to notify [defendant] of a change in her circumstances—the double subsidy." Plaintiff ignores that the lease, by its terms, only requires a resident to report changes to the *resident's* circumstances, not to any other individual's circumstances. Further, defendant was only required to report "any change in family income, family size, or circumstance . . . ." The doctrine of *ejusdem generis* states that general words following specific subjects are presumed to include only things of the same kind, class, or character. *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000). The preceding terms, the resident's own family income and family size, bear no similarity to the conduct of another individual living separately from the resident. Furthermore, this provision only required defendant to report changes that "would justify an increase in rent . . . ." Plaintiff offers no explanation of how Tiffany's conduct could justify increasing defendant's rent. In short, the lease did not require defendant to notify plaintiff that Tiffany or anyone else was receiving a duplicate subsidy for the children, and accordingly, defendant's failure to do so did not give rise to a right to terminate under paragraph eight of the lease.

Finally, paragraph 8 only allows the lease to be terminated in the case of an "intentional misrepresentation" or a "willful failure to notify . . . ." The terms "intentional" and "willful" are not defined by the lease. However, courts are to enforce unambiguous contractual terms, and such terms are to be given their plain and ordinary meanings. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526-527; 791 NW2d 724 (2010). "Courts may consult dictionary

definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Id*. at 527-528. "Willful" is defined as "deliberate, voluntary, or intentional," while "intentional" is defined as "done with intention or on purpose; intended[.]" *Random House Webster's Collegiate Dictionary* (2001). "Intend" is defined as "to have in mind something to be done or brought about; plan[.]" *Id*. Certainly, the terms "intentional" and "willful" as used in the lease infer an act (or failure to act) done with knowledge of the relevant facts. The district court did not find that defendant had any knowledge that Tiffany was receiving a duplicate subsidy for the children. Thus, even if the lease could be read as creating a duty for defendant to report such conduct, because there was no finding that her failure to report the conduct was intentional or willful, paragraph eight did not provide any ground to terminate the lease.

## B. 24 CFR § 5.233

Defendant also argues that the trial court erred by relying on 24 CFR § 5.233. We agree.

"The proper interpretation of a statute is a legal question that this Court . . . reviews de novo." *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010).

Along with an allegation that defendant made an intentional misrepresentation in violation of the lease, plaintiff's complaint alleged that defendant violated "HUD's Multi-Subsidy Program." At the outset of trial, plaintiff explained the alleged violation of the HUD regulations led plaintiff to initiate an action for termination of tenancy. At trial, plaintiff questioned Leslie regarding 24 CFR § 5.233:

> *Q*. And, Ms. Leslie, is the receipt of a double subsidy a violation of any HUD Regulation?
>
> *A*. Yes it is.
>
> *Q*. What regulation is it, if you know?
>
> *A*. It's HUD's Multi-Subsidy Policy.
>
> *Q*. And does that have a CFR, Code of Federal Regulation [sic]?
>
> *A*. It does, CFR 245.233 [sic, 24 CFR § 5.233].

Plaintiff asked the district court to take judicial notice of 24 CFR § 5.233, and the district court did so. Leslie further explained:

> *Q*. Ms. Leslie, is it safe to say that both [defendant] and [Tiffany] are both in violation of the Multi-Subsidy Program?
>
> *A*. Yes.
>
> *Q*. Regardless of who has physical custody of the two children?
>
> *A*. Repeat the question.

*Q.* Would they both be in violation, regardless of who[]ever has physical custody of the two children?

*A.* Possibly yes.

Defendant asked that Leslie explain what she meant by stating, "Possibly yes[,]" to which Leslie responded, "Possibly yes means that if one or both parties failed to notify the Housing Authority of children being provided subsidy in both homes, that both could be—one could be or both could be."

In its closing argument, plaintiff argued that the circumstances "violate[d] the Code of Federal Regulations," and specifically asked the court to "terminate [defendant]'s tenancy pursuant to the statute [sic, regulation], thank you." In stating its ruling, the district court acknowledged that it took judicial notice of 24 CFR § 5.233, and stated that plaintiff was "required to do inquiries in order to prevent fraud; and in their inquiries they [sic] determined that the two minor children were receiving double subsidies . . . ."[5] However, the district court's initial ruling did not explicitly state that defendant violated the regulation, or conclude that a violation of the regulation would allow termination of the lease. After defendant requested clarification of the ruling, the district court stated that the existence of duplicate subsidies was "in violation of the rules for maintaining Inkster Public Housing." As the only rule discussed was 24 CFR § 5.233, presumably, the district court was referencing this rule. The court then suggested that defendant had an obligation to know Tiffany's conduct in regard to the subsidy. After defendant explained that she did not know what Tiffany had done, the court told defendant "that's what you need to know, because you have a contract and an agreement that says if you involve yourself in multi-subsidies, then you're in violation of the lease." The district court further explained that, even if defendant had no knowledge of Tiffany's conduct, she "need[ed] to make it [her] business to know that."

Thus, although it initially found that plaintiff was entitled to judgment in its favor because of a misrepresentation, the district court's further explanation to defendant indicated that the existence of duplicate subsidies, regardless of whether defendant had any knowledge of their existence, violated 24 CFR § 5.233 and was a ground for termination of her lease. In doing so,

---

[5] This statement was correct. 24 CFR § 5.233(a)(2) states:

> Processing entities must use HUD's [Enterprise Income Verification] system in its entirety:
>
> (*i*) As a third party source to verify tenant employment and income information during mandatory reexaminations or recertifications of family composition and income, in accordance with § 5.236, and administrative guidance issued by HUD; and
>
> (*ii*) To reduce administrative and subsidy payment errors in accordance with HUD administrative guidance.

the district court seemed to adopt Leslie's explanation that the rule required defendant and Tiffany to notify their respective housing authorities if the children were being claimed by multiple parties. Both Leslie and the district court are incorrect. The regulation only imposes a duty on "*processing entities* [to] use HUD's [Enterprise Income Verification] system . . . ." 24 CFR § 5.233(a)(2) (emphasis added). The rule places no duty on a tenant to do anything at all; it plainly limits its requirements to various processing entities, which are specifically enumerated in 24 CFR § 5.233(a)(*i*) to (*ix*). The rule imposed no duty on defendant to report anything to plaintiff, and certainly no duty to investigate whether duplicate subsidies existed, as the district court suggested. Accordingly, there is no conceivable way for defendant to violate the regulation, and to the extent the district court suggested defendant violated this rule, the district court erred.

Plaintiff argues that defendant mischaracterizes Leslie's testimony, as it believes Leslie only testified that the regulation imposed a duty on plaintiff to use mandated reports. Plaintiff's position is disingenuous. At the start of trial, plaintiff stated that it sought to terminate defendant's tenancy due to a violation of HUD regulations. It was plaintiff who elicited Leslie's testimony, in which she explained her belief that the existence of duplicate subsidies violated the regulation and that defendant had a duty under the regulation to report the existence of duplicate subsidies to plaintiff. Plaintiff further asked the court to "terminate [defendant]'s tenancy pursuant to the [s]tatute [sic, regulation], thank you." Defendant has in no way mischaracterized Leslie's testimony, and as was explained above, the district court seemed to rely on Leslie's testimony in deciding the matter.

Plaintiff further argues that this error does not require reversal because the district court's ruling can be affirmed based on its finding that a misrepresentation occurred. Because the district court's factual finding that a misrepresentation occurred without evidence or a finding that it was defendant that made the misrepresentation, it is insufficient to support a conclusion that defendant violated her lease. Plaintiff's argument lacks merit.

Because of our resolution of the issues presented by defendant, we decline to address the additional issues raised by the Legal Services Association of Michigan, as those issues are unnecessary to resolve the appeal.

Reversed. Defendant, the prevailing party, may tax costs. MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Peter D. O'Connell