*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. A. WHITEHAIR, Minor.

UNPUBLISHED
July 25, 2024

No. 368840
Macomb Circuit Court
Family Division
LC No. 22-000116-NA

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court's order terminating her parental rights to the minor child, PAW, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (j) (reasonable likelihood child will be harmed if returned to the parent's home).[2] We affirm.

## I. FACTUAL BACKGROUND

Respondent is a mildly cognitively-impaired adult and has a diagnosis of "other specified bipolar and related disorders."[3] During her pregnancy with PAW, respondent threatened to commit suicide and was hospitalized. Shortly after the birth of PAW in April 2022, respondent reported to hospital staff that she was homeless and lacked income. She was appointed a guardian.

---

[1] The trial court also terminated the parental rights of the minor child's father. No appeal on his behalf has been filed. Consequently, we will refer to the child's mother as "respondent."

[2] Respondent argues that the trial court erred by finding statutory grounds to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). However, the trial court expressly stated that it did not find statutory grounds under MCL 712A.19b(3)(c)(*ii*). Consequently, we do not address respondent's arguments in relation to MCL 712A.19b(3)(c)(*ii*).

[3] This diagnosis is "a category of DSM-5 diagnoses that applies to individuals who have symptoms characteristic of a bipolar and related disorder (e.g. - bipolar I, bipolar II, cyclothymic disorder) but do not meet the full criteria for any of them." PsychDB, *Other Specified Bipolar and Related Disorders* <https://www.psychdb.com/bipolar/z-other-bipolar> (accessed June 18, 2024).

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

Adult Protective Services (APS) contacted Children's Protective Services (CPS) to report concerns of neglect toward PAW and a general inability to care for him. CPS met with respondent, who reported that she did not have housing, income, or positive support.

The Department of Health and Human Services (DHHS) filed a petition requesting the trial court to take jurisdiction over PAW and removed him from respondent's care. The DHHS alleged that respondent was unemployed, had ongoing mental health issues and failed to comply with the services offered to her. The DHHS further alleged that the severity of respondent's mental health issues placed PAW at a substantial risk of harm. At the adjudication, the trial court found sufficient justification to take jurisdiction over PAW. PAW was removed from respondent's care in May 2022 and placed in the care of nonrelative foster parents.

After the adjudication, mother entered a parent-agency treatment plan that required her to engage in parenting classes, complete drug screens, maintain a drugfree lifestyle, attend therapy to address issues related to emotional stability, maintain regular contact with the DHHS, maintain a safe and legal home for PAW, exhibit lawful behaviors, and maintain a regular visitation schedule. The DHHS was required to accommodate her in compliance with the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.

During these proceedings, respondent demonstrated a pattern of noncompliance with her parent-agency treatment plan. APS and her guardian found housing for respondent on more than one occasion, which she refused. Respondent was evicted from several homes after threatening her landlords. Respondent also failed to undergo any mental health treatment, did not participate in any drug screens, and did not undergo a substance abuse assessment or treatment. She exhibited erratic and threatening behavior toward her foster care case manager, the trial court, and others. Respondent was able to obtain income through Social Security Disability Insurance. She worked with a visitation coach and completed a foster care visitation program. However, after completion of the program, respondent stopped consistently visiting PAW.

Since his removal from respondent's care, PAW lived with the same foster parents and a foster sibling. By the time of the termination hearing, PAW's foster parents sought to adopt him, but had no interest in a guardianship. PAW had a bond with his foster parents and sibling. The foster parents provided PAW with love, affection, support, and provided for his material, physical, and medical needs. He thrived in their care.

Between March 14, 2023, and the termination hearing on October 27, 2023, respondent only visited PAW one time in April 2023. Respondent did not attend the termination hearing. At the termination hearing, respondent's foster care case manager and guardian stated that they were unaware if respondent had housing. Respondent was also at risk of losing her Social Security Disability income because of her failure to provide proof of housing. Respondent provided no portion of her income, except for the purchase of one outfit, for PAW's benefit throughout the proceedings.

The referee recommended terminating respondent's parental rights to PAW because clear and convincing evidence established statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). The referee further recommended that termination

served PAW's best interests. The presiding judge adopted the referee's recommendation and entered an order terminating respondent's parental rights. Respondent now appeals.

## II. STANDARD OF REVIEW

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest under MCL 712A.19b(5)." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (quotation marks and citation omitted). A finding is clearly erroneous "[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted; alterations in original). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted).

## III. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding that clear and convincing evidence established statutory grounds for termination. We disagree.

Before addressing the statutory grounds upon which the trial court terminated respondent's parental rights, we address respondent's reliance on *Fritts v Krugh*, 354 Mich 97, 114; 92 NW2d 604 (1958), overruled on other grounds by *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993), for the proposition that "the entry of an order for permanent custody due to neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future." Respondent's reliance on this case is misplaced. MCL 712A.19b(3), enacted 30 years after *Fritts*, now governs termination proceedings. 1988 PA 224. The various subsections of § 19b(3) do not specifically refer to "neglect" or long-term neglect; however, these subsections identify specific circumstances and conduct, many of which are consistent with neglect, that justify termination of parental rights. Accordingly, we find no merit in respondent's reliance on *Fritts*.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "[T]he petitioner for the termination of parental rights bears the burden of proving at least one ground for termination." *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000), superseded in part by statute as stated in *In re Moss*, 301 Mich App at 83. "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021).

The trial court found that clear and convincing evidence established statutory grounds for terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court entered the dispositional order on July 20, 2022, and the termination order on October 31, 2023. Therefore, at the time of termination, more than 182 days elapsed since the issuance of the initial dispositional order. See MCL 712A.19b(3)(c)(*i*).

This Court held that termination under MCL 712A.19b(3)(c)(*i*) is proper when "the totality of the evidence amply support[ed] that [respondent] had not accomplished any meaningful change in the conditions" leading to the adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). In this case, respondent's homelessness, mental health, substance abuse, parenting skills, and lack of income led to the adjudication. Clear and convincing evidence established that these conditions continued to exist and no reasonable likelihood existed that respondent would rectify those conditions within a reasonable time considering PAW's age.

Respondent was homeless when PAW was born. Her treatment plan required her to find and maintain safe and legal housing. Throughout these proceedings, respondent's legal guardian and APS continually offered respondent housing, which she refused. She was evicted from several properties and refused to leave properties from which she no longer had a lease. There were also allegations that respondent stole items from these properties, such as televisions and mattresses. Respondent argues that she obtained suitable housing. However, during the termination hearing, her foster care case manager and the trial court were unaware if respondent had housing because she refused to provide information about her housing situation to her guardian or case manager. The record showed that respondent did not have consistent housing throughout the proceedings and refused to stay in homes offered to her. The pattern of evictions and refusal to accept housing demonstrated that she would not rectify this condition within a reasonable time.

Another condition that led to the adjudication was respondent's mental health. Respondent demonstrated erratic behavior throughout the proceedings, including threatening case workers, attorneys, and the trial court. Respondent's mental health concerns were persistent and unaddressed. Despite the availability of mental health services, respondent consistently failed to participate in mental health treatment. Her ongoing mental health issues and failure to make any effort toward treatment demonstrated both that a condition that led to adjudication was ongoing and that respondent would not rectify that condition within a reasonable time.

-4-

Respondent's parent-agency treatment plan also required her to maintain a substance-free lifestyle. The extent of respondent's substance abuse is unclear because respondent never completed an assessment or participated in required drug screens. Respondent also never participated in substance abuse treatment. Her refusal to participate in these services supports that the trial court did not err by finding that this condition still existed and that respondent was not reasonably likely to rectify it in a reasonable time.

Respondent's improper supervision of PAW also led to the adjudication. Respondent's treatment plan required her to attend parenting classes and supervised visits with PAW. Although respondent completed a foster care supportive-visitation program, after the program finished, she stopped visiting PAW. At the time of termination, respondent had not consistently visited PAW in seven months. The trial court did not err by finding this condition still existed and that respondent was not reasonably likely to rectify it.

Finally, respondent's lack of income was a condition leading to adjudication. At the time of termination, respondent had income through Social Security Disability Insurance. However, the trial court noted this income was not stable because respondent was at risk of losing it.

We find, examining the record as a whole, regardless of whether respondent rectified her lack of income, the trial court appropriately determined that respondent did not accomplish meaningful change in the conditions that led to adjudication or that respondent would be able to rectify these conditions within a reasonable time considering PAW's age. See *id.* at 272. The DHHS presented significant evidence showing that respondent failed to comply with her parenting plan, or to remedy most of the conditions that led to termination, including lack of housing, serious mental health concerns, and parenting skills. Further, respondent continually refused to cooperate with efforts to provide her support and treatment.[4] The trial court, therefore, did not err by ruling that statutory grounds existed requiring termination of respondent's parental rights to PAW.[5]

---

[4] Respondent states in the Statement of Facts and Procedure section of her appellant brief that "[t]his case has been designated an ADA case." She further notes that testimony for the petitioner at the termination hearing opined that the services offered by petitioner complied with the ADA. Our Supreme Court has held that reunification efforts provided to a mentally disabled parent are "reasonable under the Probate Code [if] the [DHHS] modifies its services as reasonably necessary to accommodate a parent's disability." *In re Hicks/Brown*, 500 Mich 79, 90; 893 NW2d 637 (2017). Although respondent did not raise compliance with the ADA as an enumerated issue, we note that the trial court referee concluded that the services provided by petitioner appropriately and reasonably accommodated respondent's disability under the ADA. There is no evidence to support that this conclusion was not correct in fact and law.

[5] Because termination was proper under MCL 712A.19b(3)(c)(*i*), we need not consider the additional grounds upon which the trial court based its decision. See *In re Sanborn*, 337 Mich App at 273. Nonetheless, after review of the record, we find no error in the trial court's holding that statutory grounds to terminate respondent's parental rights existed under MCL 712A.19b(3)(j).

## IV. BEST INTERESTS

Respondent argues that the trial court erred by finding termination of her parental rights was in PAW's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. "The trial court should weigh all the evidence available to determine the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

"The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining the child's best interests, the trial court may consider factors including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 346-347 (citation omitted).]

The trial court may also consider the child's safety and well-being, and any risk of harm the child may suffer if returned to the parent. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). "A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted). If applicable, this factor weighs against termination. *Id*. at 347.[6]

Respondent contends that termination was not in PAW's best interests because she shared a bond with PAW and visited him on a relatively consistent basis. However, record evidence indicates that PAW and respondent did not have a bond. At the time of termination, PAW was approximately 18 months old and had lived in foster care almost his entire life. Although respondent complied with a visitation schedule at the beginning of the child protective proceedings, she eventually ceased visiting PAW. Between March 14, 2023, and October 27, 2023, respondent only visited PAW one time. Given this record evidence, the trial court properly determined that respondent lacked a bond with PAW and that this factor weighed in favor of termination.

---

[6] We acknowledge respondent's citation to other jurisdiction's caselaw respecting the best-interest analysis. Although such caselaw may be persuasive, see *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529 n 2; 791 NW2d 724 (2010), we see no reason to address these cases given that our own statutory system addressing termination proceedings and binding caselaw guides our analysis.

In addition, the other relevant factors weighed by the trial court favored termination. No relative placement was available for PAW. The trial court did not clearly err by concluding that termination would provide PAW the stability, finality, and permanency he needed. The trial court considered PAW's placement with his nonrelative foster parents, who gave him a supportive and safe environment. He was bonded to his foster parents and sibling. PAW's foster parents demonstrated a desire to adopt him. The trial court also weighed respondent's mental health, lack of housing, and repeated noncompliance with her parent-agency service plan in favor of termination. *Id*. at 346-347. The record established that respondent demonstrated an overall unwillingness to participate in her service plan and that she did not address her mental health, substance abuse, or housing conditions. Likewise, respondent provided little to no financial support for PAW throughout the proceedings. We conclude that the trial court did not clearly err by finding that a preponderance of the evidence established that termination of respondent's parental rights served PAW's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer