# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCIS & HIGH PROPERTIES, LLC,

        Plaintiff-Appellee,

v

HAPPY'S PIZZA FRANCHISE, LLC,

        Defendant-Appellant,

and

HAPPY'S PIZZA #19, INC.,

        Defendant.

UNPUBLISHED
November 17, 2015

No. 322678
Jackson Circuit Court
LC No. 13-003627-AV

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

This appeal arises from a lease involving plaintiff Francis & High Properties, LLC, the owner of the subject commercial property, and defendants Happy's Pizza #19, Inc. (Happy's #19) and Happy's Pizza Franchise, LLC (HPF). HPF is the franchisor of Happy's Pizza #19. HPF appeals by leave granted[1] an order of the circuit court affirming the ruling of the district court that the language of the commercial lease at issue unambiguously named HPF as cotenant under the lease. Because we conclude that the language at issue is ambiguous such that further factual development is necessary to ascertain the intent of the parties, we reverse the circuit court's affirmation of the district's court's ruling and remand the matter to the district court for further proceedings.

On November 21, 2006, plaintiff, HPF, and Happy's Pizza #19, executed a lease whereby plaintiff agreed to lease an approximately 1600 square foot commercial space located in Jackson to Happy's #19 for five years at a monthly rent of $3,000, with an automatic renewal at increasing rates for 10 years thereafter. On June 28, 2013, plaintiff initiated an action for nonpayment of rent in the district court. Plaintiff named both Happy's #19 and HPF in its

---

[1] *Francis & High Props LLC v Happy's Pizza Franchise, LLC*, unpublished order of the Court of Appeals, entered December 16, 2014 (Docket No. 322678).

-1-

complaint, and alleged that they owed $15,000 in rent. Plaintiff also sought an award of money damages in the amount of $139,544.80 for "lease acceleration" due under the terms of the lease. HPF answered that it was not a proper party to the suit because it did not have a possessory interest in the premises and was not "a guarantor of the obligations of Tenant Happy Pizza #19, Inc. . . ." Happy's #19 did not answer the complaint or make an appearance in the action. In contrast, plaintiff argued that HPF had been named as a "tenant" in the lease, meaning that HPF could be held liable for nonpayment of rent and the accelerated rent damages.

The district court ultimately ruled in plaintiff's favor. The district court found that the preamble to the lease clearly and unambiguous expressed the parties' intent to designate HPF as a cotenant under the lease. Consequently, the district court concluded that HPF was liable as a tenant, and the district court entered a money judgment in favor of plaintiff against both defendant HPF and defendant Happy's #19 for the court's jurisdictional limit of $25,000, MCL 600.8301(1), plus interest.[2] The district court also issued a judgment of possession in favor of plaintiff.

Defendant HPF filed an untimely claim of appeal with the circuit court, MCR 4.201(N)(2), which nevertheless heard the appeal pursuant to MCR 7.103(B)(1)(b). In an opinion and order dated May 12, 2014, the circuit court affirmed the ruling of the district court. The circuit court agreed with the district court's determination that HPF was unambiguously named as a cotenant in the introductory paragraph to the lease. Further, the circuit court

---

[2] After the district court awarded plaintiff $25,000, plaintiff attempted to seek additional damages in circuit court, but the circuit court dismissed plaintiff's claims on the basis of res judicata. Plaintiff now argues on appeal that res judicata does not apply because the district court's order is void for lack of jurisdiction given that the amount in controversy, as set forth in plaintiff's complaint, exceeded the court's $25,000 jurisdictional limit. See MCL 600.8301(1); *Moody v Home Owners Ins Co*, 304 Mich App 415; 849 NW2d 31 (2014). Contrary to this argument, it is clear that the amount in controversy did not exceed $25,000 because plaintiff affirmatively abandoned any claim for damages in excess of the district court's jurisdictional limit. That is, plaintiff originally joined a claim for money damages to its complaint for demand of possession, seeking $139,544.80 in accelerated rent under the lease agreement. See MCR 600.5739(1); MCR 4.201(G)(1)(a)(*i*). HPF challenged the district court's jurisdiction based on the amount in controversy, at which time plaintiff's counsel expressly stated that plaintiff was "only pursuing the amount of the jurisdictional limit of the Court, which is 25,000." Plaintiff then filed a supplemental complaint, seeking only $25,000. Having filed suit for accelerated rent damages under the lease and then affirmatively agreed to forego damages over $25,000, plaintiff abandoned any such claim for damages. See *Braverman v Granger*, 303 Mich App 587, 609; 844 NW2d 485 (2014). Consequently, the amount in controversy did not exceed $25,000, and the district court had subject matter jurisdiction over plaintiff's claim. See MCL 600.8301(1); MCL 600.8302(1) and (3); MCL 600.5739(1). The district court's order awarding money damages was thus a final order resolving the question of money damages arising from the lease and res judicata bars plaintiff's efforts to seek additional damages in circuit court. See *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575-577; 621 NW2d 222 (2001).

emphasized that language in the lease relating to HPF's ability to assume the lease indicated that HPF would "remain[] liable" for the obligations under the lease, and the circuit court reasoned that HPF must already be liable as a cotenant if it were to "remain" liable. The circuit court denied HPF's motion for reconsideration. HPF now appeals as on leave granted.

On appeal, HPF argues that the lease is ambiguous with respect to whether HPF was a "tenant" under the lease. Specifically, HPF concedes that the introductory language indicates that HPF is a tenant, but HPF maintains that this categorization is contrary to (1) the signatory line which identified HPF only as a "franchisor," (2) an assignment provision which allows HPF to "assume" a tenant's rights and liability under the lease, and (3) a rider to the agreement which distinguishes between a "tenant" and "franchisor" with respect to the right of first refusal. Because the terms of the lease at issue are ambiguous, HPF asserts that the district court should have considered extrinsic evidence to determine the parties' intent at the time they entered into the lease. Additionally, HPF argues that, if the parties' intent could not be determined using conventional interpretation methods, the district court should have construed the lease against plaintiff because plaintiff was the drafter of the agreement. In contrast, plaintiff argues that the lower courts correctly recognized that the language of the preamble clearly and unambiguously identifies defendant HPF as a cotenant with Happy's #19.

A lease is "a contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration." *NACG Leasing v Dep't. of Treasury,* 495 Mich 26, 29 n 10; 843 NW2d 891 (2014), quoting *Black's Law Dictionary* (10th ed). As a contract, a lease is subject to the ordinary rules of contract interpretation. *Sprik v Regents of Univ of Mich*, 43 Mich App 178, 193; 204 NW2d 62 (1972). The primary goal when interpreting a contract is to honor the intent of the parties. *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 174; 858 NW2d 765 (2014). The contract must be read as a whole, and terms must be accorded their plain and ordinary meaning. *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009).

While unambiguous language must be enforced as written as a matter of law, the meaning of ambiguous contract language poses a question of fact. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010). "[A] contract is ambiguous when two provisions irreconcilably conflict with each other, or when a term is equally susceptible to more than a single meaning." *Id.* (citation and quotation marks omitted). "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008) (quotation omitted). However, "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). Moreover, an ambiguity in a contract may be either patent or latent. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). While a patent ambiguity is apparent on the face of the document, a latent ambiguity arises when the contract language appears clear but other facts, including extrinsic evidence, necessitate a choice among two or more possible meanings. *Id.* at 668. Thus, extrinsic evidence may be admissible to prove the existence of an ambiguity, and to resolve any ambiguity that exists. *Id.* If there is a

"true ambiguity, and the parties' intent cannot be discerned through all conventional meanings, including extrinsic evidence," courts employ the common-law rule of *contra proferentem*, which requires that the agreement be construed against the drafter. *Holland*, 287 Mich App at 527.

In this case, under the contract in question, the "tenant" plainly leased plaintiff's commercial building in exchange for which the "tenant" agreed to pay a specified sum of rent. At issue is whether the term "tenant" refers solely to Happy's Pizza # 19 or whether it also encompasses HPF such that HPF is liable for rent and damages under the lease as a cotentant. Relevant to this dispute, the lease preamble supports plaintiff's assertion that HPF is a tenant. This preamble states:

> This lease made this 21st day of NOVEMBER, 2006 by and between **FRANCIS & HIGH PROPERTIES, LLC**, 21745 W. Eight Mile Road, Detroit, MI 48219 the lessor, herein after designated as the Landlord, and, **HAPPY'S PIZZA #19 INC**., 29201 Telegraph Road suite 607, Southfield, Mi 48034, the lessee and **HAPPY'S PIZZA FRANCHISE, LLC.**, a Michigan limited liability company (hereinafter referred to as "Franchisor"), herein after designated as the Tenant. [Boldface in original.]

This paragraph identifies defendant HPF as the "Franchisor" and it labels Happy's Pizza #19 as a "lessee." The paragraph also appears to designate both Happy's Pizza #19 and HPF as "the Tenant." In the remainder of the contract, the term "lessee" appears only once more, in a paragraph relating to permits. The term "franchisor" appears numerous times in apparent reference to HPF. In comparison, the term "tenant" appears numerous times in the agreement and, as set forth below, the term "tenant" is often used in apparent reference solely to Happy's Pizza #19, which evinces an ambiguity with respect to the meaning of the term tenant.

Specifically, to begin with, the signature page of the rider to the agreement is signed by plaintiff, Happy's Pizza #19, and HPF. The signature page clearly identifies plaintiff as "landlord," Happy's Pizza #19 as "tenant," and HPF as "franchisor." It does not denote HPF as a "tenant," and yet it specifically employs the term "tenant" in reference to Happy's Pizza #19 as opposed to employing the term "lessee" to refer to Happy's Pizza #19. This categorization of the parties does not comport with the preamble's identification of HPF as a "tenant." Moreover, the rider's caption clearly uses the term "tenant" solely in reference to Happy's Pizza #19. It states:

**RIDER ATTACHED TO AND MADE A PART OF**
**A CERTAIN LEASE BY AND BETWEEN**
**<u>FRANCIS & HIGH PROPERTIES, LLC</u>, AS LANDLORD,**
**<u>HAPPY'S PIZZA #19, INC</u>, AS TENANT AND**
**<u>HAPPY'S PIZZA FRANCHISE, LLC</u>, AS FRANCHISOR**
**CONCERNING LEASED PREMISES LOCATED AT**
**1236 Francis Street <u>JACKSON, MICHIGAN</u>**

Further, when examining clauses within the agreement and the rider, there are numerous additional instances in which it appears that the term "tenant" has been used solely in reference to Happy's Pizza #19 so as not to include HPF. For example, ¶ 8 of the lease states in relevant part:

Notwithstanding the foregoing, Landlord and Tenant agree that without Landlord's consent, after a termination or expiration of the Tenant's franchise, if applicable, *all or any part of this Lease and the right, title and interest of Tenant may be assumed by Franchisor* or its designee and that the assuming party may sublease the premises so long as the Franchisor remains liable for all obligations set forth [in] the Lease. Franchisor agrees to execute an appropriate amendment to this Lease that shall require it to perform all obligations of the lease arising after the effective date of the assignment. The provisions of this paragraph shall not apply to a termination for cause by Tenant of the Happy's Pizza franchise agreement, if so applicable.

Landlord and Tenant agree to provide Franchisor with thirty (30) days advance written notice of an assignment or sublease by either Landlord or Tenant of this Lease. [Emphasis added.]

Under this paragraph, the Franchisor is granted the ability to assume "all or any part of this Lease and the right, title and interest of Tenant . . . ." The Franchisor plainly refers to HPF, meaning that HPF has the ability to assume the tenant's "right, title and interest" in the lease. But, if HPF were a co-tenant under the lease, it would already possess these rights and would have no need to assume these rights, suggesting that the term "tenant" does not encompass HPF, but instead refers to Happy's Pizza #19. Similarly, under this paragraph, the "landlord" and "tenant" agree to provide the franchisor, i.e., HPF, with 30 days written notice of an assignment or sublease, a provision which would be unnecessary if the term "tenant" included HPF. If HPF elects to assume the lease, it may sublease the premises so long as it "remains liable" for all the lease obligations it has elected to assume.[3]

Likewise, ¶ U of a rider to the agreement appears to distinguish between Happy's Pizza #19 as "tenant" and HPF as "franchisor." It provides:

Provided that Tenant is not in default hereunder, *Tenant shall have and is hereby given the Right of First Refusal* to purchase the Property, together with all improvements thereon, if so exercised and *in the absence of such exercise, Franchisor shall then have such right* for the price and upon the terms and conditions as are received by and are acceptable to the Landlord by way of a *bona fide* offer ("Outside Offer") to purchase from a third party ("Third Party"). . . . [Emphasis added.]

---

[3] Plaintiff and the circuit court emphasize the "remains liable" language, suggesting that HPF must have already been liable if it is to remain liable. But, fairly read, the paragraph suggests that *if* the Franchisor or someone else assumes the tenant's rights, it can sublease the property so long as HPF remains liable. In other words, the Franchisor must first assume liability and then having elected to do so, the sublease will continue while the Franchisor remains liable. We do not read this language as indicating a liability that exists before the Franchisor elects to assume liability.

Again, the use of the term "tenant" in this paragraph does not appear to encompass HPF insofar as it creates an order in which a right of first refusal may be exercised under which the "tenant" has first rights and the "franchisor" has a secondary option. If HPF were a "tenant" it would not need this secondary right, and if the parties merely intended to distinguish between HPF and Happy's Pizza #19 they would have employed the terms "lessee" and "franchisor." Instead, the use of "tenant" in this context appears to refer solely to Happy's Pizza #19. Considering the contract as a whole, given that the term tenant is used repeatedly in the agreement to refer solely to Happy's Pizza #19 and yet it also appears to encompass HPF in the preamble, we conclude that the term "tenant" as used in the lease is ambiguous.

Given that the term is ambiguous, the district court erred by failing to consider extrinsic evidence regarding the parties' intent. For instance, HPF presented the affidavit of its managing member, Happy Asker, who averred that HPF "was not the Tenant nor a guarantor of the Lease." Asker maintained that HPF "executed the Lease in order to obtain the right of first refusal to purchase the subject property and the right to enforce the Franchise Agreement to have the Lease assigned to [HPF] in the event of a default for its franchisee [defendant Happy's #19]." Further, the lower court record indicates that Happy's Pizza #19 occupied the premises to operate its pizza franchise and that Happy's Pizza #19 paid rent (until the time of default). In contrast, HPF never occupied the premises or paid rent. In light of the contract ambiguity with respect to HPF's status as a "tenant," these extrinsic facts should have been considered to determine the parties' intent as a fact question. See *Holland*, 287 Mich App at 527. Further, if the parties' intent cannot be ascertained through conventional means, including the use of extrinsic evidence, HPF is correct that the lease should be construed against plaintiff because plaintiff drafted the agreement. See *id.*

Reversed and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly