LUMLEY v BOARD OF REGENTS FOR THE UNIVERSITY OF
MICHIGAN

Docket No. 145941. Submitted June 7, 1995, at Lansing. Decided
January 12, 1996, at 9:45 A.M. Leave to appeal sought.

Linda J. Lumley brought an action in the Washtenaw Circuit
Court against Mary Johnson, a doctor at University Health
Services of the University of Michigan. Lumley also brought an
action in the Court of Claims against the Board of Regents for
the University of Michigan and University Health Services.
Both actions sought damages for medical malpractice related to
services provided by Dr. Johnson. The two actions were joined.
Donald E. Shelton, J., presided over the jury trial in the circuit
court and sat in the capacity of Court of Claims judge in the
Court of Claims action. The jury returned a verdict for Dr.
Johnson in the circuit court action and the court entered a
judgment for Dr. Johnson. In the Court of Claims action, the
court found that Dr. Johnson was negligent and that the Board
of Regents and University Health Services were vicariously
liable for Dr. Johnson's professional negligence. The court
entered a judgment for the plaintiff. The Board of Regents and
University Health Services appealed from the Court of Claims
judgment.

The Court of Appeals held:

1. For purposes of the application of governmental immunity,
the cause of action here arose when the action could be alleged
in a complaint. The facts show that the plaintiff could not have
alleged the damages element of her malpractice claim until
June 16, 1987. Because her cause of action arose after July 1,
1986, the public hospital exception to governmental immunity,
MCL 691.1407(4); MSA 3.996(107)(4), applies in this case.

2. Collateral estoppel did not apply to estop the Court of
Claims from finding vicarious liability on the part of the Board
of Regents and University Health Services. Simply because the

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§ 81; Physicians, Surgeons and Other Healers §§ 318-319, 321.

See ALR Index under Malpractice by Medical or Health Profes-
sions.

Court of Claims entered its findings and conclusions after the jury in the circuit court action returned a verdict finding Dr. Johnson not guilty of negligence does not mean that there was a relitigation of the issue of Dr. Johnson's negligence in the Court of Claims action within the meaning of the doctrine of collateral estoppel. Because of the statutory scheme giving the Court of Claims exclusive jurisdiction over claims for money damages against state agencies and providing that such actions be decided by a judge and not a jury, it may be inferred that the Legislature did not intend traditional preclusion rules to apply.

3. A Court of Claims judge is not bound to return a verdict in a Court of Claims action that is consistent with the jury's verdict in a circuit court action joined with the Court of Claims action. Here, the Court of Claims did not err in denying the defendants' motion for a new trial that was based on the alleged inconsistency between the judgments in the circuit court action and the Court of Claims action.

4. The Court of Claims finding that Dr. Johnson was negligent was supported by the evidence and was not clearly erroneous.

Affirmed.

1. GOVERNMENTAL IMMUNITY — PUBLIC HOSPITALS.

The public hospital exception to governmental immunity applies to causes of action that arise after July 1, 1986; a cause of action arises on the date when all the elements of the action can be alleged in a proper complaint (1986 PA 175, § 3, MCL 691.1407[4]; MSA 3.996[107][4]).

2. ACTIONS — MEDICAL MALPRACTICE — ACCRUAL DATE — DATE CLAIM ARISES.

The accrual date of a medical malpractice cause of action is not synonymous with the date the claim arises; the accrual date is the date of the act or omission upon which the claim is based, regardless of when the claim was discovered, and for causes of action arising before October 1, 1986, the accrual date is the date of the last treatment; the date the claim arises is the date when all the elements of the cause of action can be alleged in a proper complaint (MCL 600.5838a; MSA 27A.5838[1]).

3. COURTS — COURT OF CLAIMS — CIRCUIT COURTS — JOINDER OF ACTIONS — CONSISTENT JUDGMENTS.

The Court of Claims is not bound in an action in the Court of Claims to return a judgment consistent with the verdict of the jury in a circuit court action joined with the Court of Claims action (MCL 600.6421; MSA 27A.6421).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Helen K. Joyner*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for the defendants.

Before: JANSEN, P.J., and FITZGERALD and R. R. LAMB,* JJ.

FITZGERALD, J. Defendants, Board of Regents for the University of Michigan and University Health Services of the University of Michigan, appeal as of right from a Court of Claims judgment in favor of plaintiff in this medical malpractice case. We affirm.

Plaintiff's action is based on the alleged failure of Dr. Mary Johnson, a doctor at University Health Services of the University of Michigan, to advise plaintiff that hypothalamus pituitary dysfunction, a condition from which plaintiff suffered that was manifested by amenorrhea, could cause endometrial cancer if untreated and to recommend treatment for the condition.

Plaintiff first sought treatment from Dr. Johnson in March 1982 because of chronic vaginal infections. At the first of two meetings, plaintiff informed the doctor of her medical history, including cervical cancer, an abortion and resultant surgery to correct scarring, removal of an intrauterine device, and amenorrhea. Dr. Johnson ordered a series of tests and placed plaintiff on Provera, a synthetic progesterone, to diagnose the cause of plaintiff's amenorrhea. Plaintiff was instructed to return in one month.

At her next appointment, plaintiff advised Dr. Johnson that she had minor spotty bleeding. Dr. Johnson, having determined that plaintiff had hy-

* Circuit judge, sitting on the Court of Appeals by assignment.

pothalamic pituitary dysfunction, advised plaintiff that she would need ovary stimulation if she were to have children. According to plaintiff, this was the extent of her discussion with Dr. Johnson.

Dr. Johnson testified that she instructed plaintiff about regular treatment with Provera and gave her a prescription for Provera. Dr. Johnson indicated that her custom and habit was to have follow-up appointments with patients who had been prescribed Provera. Dr. Johnson agreed that she did not tell plaintiff that she was at increased risk for cancer.

Plaintiff continued to experience amenorrhea through 1987, when she was diagnosed with endometrial cancer and underwent a total hysterectomy. In December 1987, plaintiff filed a complaint in the Washtenaw Circuit Court against Dr. Johnson, the Board of Regents, and University Health Services. The case was assigned to Judge Edward Deake. Pursuant to Judge Deake's September 2, 1988, order, the suit against the Board of Regents and University Health Services was transferred to the Court of Claims. Judge Thomas L. Brown was assigned to sit as the judge in the Court of Claims. The case was later joined with the case against Dr. Johnson in the Washtenaw Circuit Court pursuant to MCL 600.6421; MSA 27A.6421.

Defendants sought and were denied summary disposition based on governmental immunity. Judge Deake concluded that the amended version of MCL 691.1407(4); MSA 3.996(107)(4) applied in this case.

Before trial, the case was reassigned to Washtenaw Circuit Judge Donald E. Shelton, who presided over the circuit court case and sat in the capacity of Court of Claims judge in plaintiff's suit against the Board of Regents and University Health Services.

In the circuit court action, the jury returned a verdict for Dr. Johnson. In the Court of Claims action, Judge Shelton found that Dr. Johnson was negligent and that the Board of Regents and University Health Services were vicariously liable for Dr. Johnson's professional negligence. Judge Shelton entered judgment for plaintiff in the amount of $140,000. A motion by the Board of Regents and University Health Services for judgment notwithstanding the verdict was denied.

## I

The first issue in this case is when the cause of action arose for purposes of the application of governmental immunity. The governmental immunity act was amended in 1986 to include a public hospital exception to governmental immunity. MCL 691.1407(4); MSA 3.996(107)(4). The exception does not apply to causes of action that arose before July 1, 1986. 1986 PA 175, § 3. Thus, if plaintiff's claim arose before that date, it is barred by governmental immunity.

The issue regarding when a cause of action "arises" under § 3 of Act 175 presents a question of legislative intent. Courts must read the statutory language being construed in light of the general purpose sought to be accomplished. *Witherspoon v Guilford,* 203 Mich App 240, 246-247; 511 NW2d 720 (1994). Where the language is so plain as to leave no room for interpretation, courts should not read into it words that are not there or that cannot fairly be implied. *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 368; 459 NW2d 279 (1990).

It is presumed that, when the Legislature enacts statutes, it is familiar with the rules of statutory construction and has knowledge of existing laws

on the same subject. *Joe Dwyer, Inc v Jaguar Cars, Inc,* 167 Mich App 672, 684; 423 NW2d 311 (1988). Where a term is not defined in a statute, resort to dictionary definitions is appropriate to construe statutory language according to common and approved usage. *Consumers Power Co v Lansing Bd of Water & Light,* 200 Mich App 73, 76; 503 NW2d 680 (1993).

The Supreme Court seems to view the word "arises" as being synonymous with "accrues." *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223, 231; 393 NW2d 847 (1986). A cause of action has been said to accrue at the moment the plaintiff could first commence a lawsuit upon it. It accrues when all the elements of the claim have occurred and can be alleged in a proper complaint. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150; 200 NW2d 70 (1972). Damage is one of those elements. *Id.* The elements of an action for damages arising out of a tortious injury include: (1) a legal duty, (2) a breach of the duty, (3) a causal relationship, and (4) damages. *Id.* at 149-150. See *Inglis v Public School Employees Retirement Bd,* 374 Mich 10, 12; 131 NW2d 54 (1964).

It could be argued that a plaintiff should know or have reason to know of a cause of action before it arises. Also arguable is that the accrual date, hence when the cause arises, should be fixed by the statute of limitations that specifically provides the means to arrive at the accrual date.

The statute of limitations for medical malpractice actions provides that the claim must be brought within two years of the accrual date or six months of discovery of the claim. MCL 600.5805(4); MSA 27A.5805(4). Discovery is merely an alternative means for commencing the running of the

statutory period of limitation. It is not an element of a malpractice action.

The accrual date of a medical malpractice cause is the date of the act or omission upon which the claim is based, regardless of when the claim was discovered. MCL 600.5838a; MSA 27A.5838(1). For causes of action arising before October 1, 1986, the accrual date is the date of the last treatment. It is clear that under the statute of limitations, the accrual date is not synonymous with the date the claim arises.

Indeed, it is logical to assume that the Legislature used the word "arise" to avoid any confusion with the special definition given accrual language in statutes of limitation. Thus, we conclude that, when the Legislature used the term "arise," it intended the meaning commonly associated with the phrase "causes of action which arise." Specifically, the date the claim arises is when the action can be alleged in a complaint. See *Inglis, supra.*

The question, therefore, is whether plaintiff could have alleged all the elements of the malpractice claim before July 1, 1986. Defendants' contention that the claim could have been alleged in 1982 ignores the damages element. Although Dr. Johnson treated plaintiff in 1982, plaintiff was not diagnosed with cancer until June 16, 1987, after which she underwent a hysterectomy. A fair reading of plaintiff's complaint reveals that the damages for which monetary relief were claimed resulted from the cancer and resultant surgery, and not from continuing amenorrhea as suggested by defendants. Accordingly, plaintiff's cause of action arose after July 1, 1986, and the public hospital exception to governmental immunity applies.

II

Defendants claim that the Court of Claims was

collaterally estopped from finding vicarious liability on the part of defendants by the jury's finding in the circuit court action that Dr. Johnson was not negligent. The doctrine of collateral estoppel is a judicial creation, developed and extended from the common law. *Nummer v Treasury Dep't,* 448 Mich 534, 544; 533 NW2d 250 (1995). In support of their argument, defendants rely upon general statements of the common law of collateral estoppel as contained in 1 Restatement of Judgments, 2d, § 27, p 250:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Collateral estoppel bars the relitigation of issues previously decided in a first action when the parties to the second action are the same; where the second action is a different cause of action, the bar is conclusive regarding issues actually litigated in the first action and essential to the judgment. *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority,* 437 Mich 441, 450-454; 473 NW2d 249 (1991). The preclusion doctrine serves an important function in resolving disputes by imposing a state of finality to litigation. By putting an end to litigation, the preclusion doctrine eliminates costly repetition, conserves judicial resources, and eases fears of prolonged litigation. *Id.*

Applying the above requirements to the present case, there is no question that there was neither relitigation of Dr. Johnson's negligence nor a subsequent action. The circuit court action against Dr. Johnson and the Court of Claims action against

the defendants were litigated in a single proceeding before different triers of fact. Simply because the Court of Claims entered its findings and conclusions after the jury returned with a verdict does not mean that there was a "relitigation" of the issue of Dr. Johnson's negligence within the meaning of the doctrine of collateral estoppel. On this basis alone, we could conclude that collateral estoppel is inapplicable to this case.

We believe, however, that collateral estoppel is inapplicable for a separate and distinct reason. The Legislature is free to modify strict application of the doctrine in any given statutory scheme. *Nummer, supra* at 544. Plaintiff was forced by the Court of Claims Act to split her cause of action between the Court of Claims and the circuit court. The Court of Claims Act confers on the Court of Claims exclusive jurisdiction over claims for money damages against state agencies. MCL 600.6419; MSA 27A.6419. The clear intent of the Legislature in creating the Court of Claims is that parties to an action against the state will have their respective rights and liabilities determined by a judge and not a jury. MCL 600.6421; MSA 27A.6421. Consequently, neither plaintiff nor defendants had any right to a jury trial in the Court of Claims action against defendants.

The combining of the Court of Claims action with the circuit court action for trial pursuant to MCL 600.6421; MSA 27A.6421 did not permit the circuit court, or any jury empaneled by it, to exercise subject-matter jurisdiction over the claim against the state.[1] See *Williams v Shin,* 111 Mich App 84, 89-90; 314 NW2d 529 (1981). Under this

[1] MCL 600.6421; MSA 27A.6421 provides that cases in the Court of Claims may be joined for trial with cases arising out of the same transaction that are pending in a trial court. When cases are joined for trial, the Court of Claims case "shall be tried and determined by the judge even though the trial court action with which it may be

statutory scheme, it can be inferred that the Legislature did not intend traditional preclusion rules to apply. To hold otherwise would effectively give the circuit court jurisdiction to decide an action against the state. Clearly, such a result would be contrary to the Legislature's express intent in granting the Court of Claims exclusive jurisdiction over claims against the state.[2]

### III

Defendants also assert that a new trial is warranted as a result of the inconsistent verdicts rendered by the jury in the circuit court action and the judge in the Court of Claims action. The cases cited by defendants, however, stand only for the proposition that a *single jury* may not render verdicts or findings inconsistent with other verdicts or findings they have rendered. See, e.g., *Clark v Seagrave Fire Apparatus, Inc,* 170 Mich App 147, 151; 427 NW2d 913 (1988). Here, defendants do not allege that either the jury verdict or the Court of Claims verdict was internally inconsistent. Rather, defendants argue that the verdicts were inconsistent with each other. As noted above, however, MCL 600.6421; MSA 27A.6421 provides that the Court of Claims judge shall determine the case against the state, and there is no indication

joined is tried to a jury under the supervision of the same trial judge."

[2] In *Stolaruk Corp v Dep't of Transportation,* 114 Mich App 357; 319 NW2d 581 (1982), a case cited by plaintiff, the plaintiff, after unsuccessfully suing the defendant for injunctive relief in the circuit court, brought an action against the defendant in the Court of Claims for money damages. This Court held that collateral estoppel applied to bar relitigation of the same issue decided in the circuit court. However, unlike the present case, *Stolaruk* did not involve two cases against two different defendants tried in a single trial before two different triers of fact. The circuit court action in *Stolaruk* was decided by the same judge who presided over the Court of Claims action.

that the Court of Claims is bound to return a
verdict consistent with the jury's verdict in a
circuit court action joined with a Court of Claims
action. Accordingly, the Court of Claims did not
abuse its discretion in refusing to grant a new
trial.

IV

Last, defendants argue that the Court of Claims
finding that Dr. Johnson was negligent is not
supported by the evidence. In reviewing the Court
of Claims decision, findings of fact will not be set
aside unless clearly erroneous. *Kensington Corp v
Dep't of State Hwys,* 74 Mich App 417, 425; 253
NW2d 781 (1977). A finding of fact is not clearly
erroneous unless there is no evidence to support it
or the reviewing court on the entire record is left
with the definite and firm conviction that a mis-
take was made. *Townsend v Brown Corp of Ionia,
Inc,* 206 Mich App 257, 263; 521 NW2d 16 (1994).
This Court affords great deference to the special
opportunity of the trial court to judge the credibil-
ity of the witnesses who appeared before it. *Id.* at
264.

The Court of Claims found that Dr. Johnson was
negligent on the basis of testimony that (1) hypoth-
alamic pituitary dysfunction could lead to endome-
trial cancer if untreated, and (2) Dr. Johnson
failed to advise plaintiff of the ramifications of
having hypothalamic pituitary dysfunction and
failed to recommend treatment. The court also
found that plaintiff had no reason to believe she
was in any medical danger because of her amenor-
rhea. These findings were supported by testimony
at trial. Both defendants' and plaintiff's experts
testified that hypothalamic pituitary dysfunction
can lead to cancer. Plaintiff testified that Dr.

Johnson failed to advise about hypothalamic pituitary dysfunction and recommend treatment. She also testified that she had no knowledge she was in danger. In finding defendants liable, the court also relied on expert testimony that Dr. Johnson breached the applicable standard of care in failing to advise plaintiff that she needed periodic examination because of the cancer risk and in failing to prescribe a course of progesterone therapy. In making its findings, the court carefully weighed the witnesses' credibility. Giving deference to the court's credibility determinations, we conclude that the court's findings of fact are supported by the evidence and are not clearly erroneous.

Affirmed.