*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUNNYSIDE RESORT CONDOMINIUM
ASSOCIATION, INC.,

        Plaintiff/Counterdefendant-
        Appellant,

v

NEIL J. BECKMAN, BECKMAN HOLDINGS,
INC., and MEINKE CONSTRUCTION, INC.,

        Defendants/Counterplaintiffs/Third-
        Party Plaintiffs-Appellees,

and

THOMAS BROWN, JANE BROWN, CLAIR
JAROS, RANDY SWONGER, and PAUL
BUSCH,

        Third-Party Defendants-Appellants,

UNPUBLISHED
April 23, 2019

No. 341116
Gogebic Circuit Court
LC No. 16-000203-AV

Before: BORRELLO, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

In this action involving a dispute over condominium association assessments, plaintiff Sunnyside Resort Condominium Association, Inc. (SRCA), and third-party defendants appeal by leave granted[1] the circuit court's opinion and order affirming a multitude of judgments, opinions, and orders by the district court in favor of defendants Neil J. Beckman, Beckman Holdings, Inc.

---

[1] *Sunnyside Resort Condo Ass'n, Inc v Beckman*, unpublished order of the Court of Appeals, entered July 18, 2018 (Docket No. 341116).

-1-

(BHI), and Meinke Construction, Inc. (MCI). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

Sunnyside originally was owned by Robert Delich, who decided to develop the property into a condominium. When the master deed was recorded on August 2, 2004, Sunnyside consisted of 14 units in total, with units 1-8 containing cabins, units 9-10 containing houses, and units 11-14 being vacant lots. Testimony revealed that Delich originally had not planned to sell any of the vacant lots, which the master deed and condominium bylaws refer to as "incomplete" units. Apparently based on that understanding, the master deed section regarding "Percentage of Value" provided that "percentages of value for each unit were computed based upon a combination of market value, size, and allocable expenses for maintenance . . . ." Units 1-8 and 11-14 were given a percentage value of 5.8334% each, unit 9 was calculated at 8.3333%, and unit 10 was 21.6659%.

In May of 2006, Delich sold units 11 and 13 to MCI and BHI, collectively. Beckman, who owned and operated BHI, testified that he and Delich agreed that incomplete units would not be assessed by the SRCA. Beckman served on the board of directors of, and as president for, the SRCA from 2007 until 2011. During his tenure, the four-person board unanimously approved a budget that did not assess units 11 and 13 according to the percentages of value listed in the master deed. Questions regarding the propriety of the lack of assessments for those units under the terms of the master deed regularly were raised during meetings of the board.

In the spring of 2011, Beckman lost his board membership and was replaced as president by third-party defendant Thomas Brown. Despite his absence therefrom, the board still voted unanimously to approve a budget that did not assess units 11 and 13. In May of 2012, the new board hired new corporate counsel, who reviewed the SRCA's finances and determined that units 11 and 13 always should have been assessed according to the percentages of value in the master deed. On June 18, 2012, the SRCA levied an assessment on units 11 and 13, which included all assessments dating back to 2006 along with a "supplemental assessment" for a tree removal, and a "current" assessment. The total invoice, for both units combined, was $11,804.94. When BHI and MCI refused to pay the assessment, Thomas Brown, acting in his capacity as president, recorded a sworn notice of liens against units 11 and 13, and this litigation ensued.

## II. PROCEDURAL HISTORY

In December of 2012, the SRCA sued defendants, asserting one count alleging a violation of the master deed and condominium bylaws by failing to pay assessments, and one count against Beckman individually, arguing that he breached his fiduciary duty to the SRCA and its members when he refused to assess units 11 and 13, in which he had a financial interest, while he served as a board member and president. Defendants responded with a counterclaim, alleging in Count I, that the SRCA had breached its fiduciary duty to the members via the actions of its board members and officers; in Count II, that the SRCA was required to, under the terms of the bylaws, indemnify Beckman for his defense of its breach of fiduciary duty claim; in Count III, that the SRCA owed Beckman for his personal payment to install a well to service units 11-14; and in Count IV, that the SRCA committed slander of title by filing improper liens against units

11 and 13. Defendants also filed a third-party complaint against certain board members and officers of the SRCA, alleging in Count I that the third-party defendants had violated their fiduciary duties to the SRCA and its members, and that, in Count II, Thomas Brown had committed slander of title by signing under oath and recording the improper liens.

The district court decided to bifurcate the issues for trial, first considering whether the master deed and bylaws required BHI and MCI to pay assessments according to the percentages of value attributed to their units. After a one day bench trial, the district court held that the master deed required units 11 and 13 to pay their share of the assessments, but that the board of directors had improperly attempted to levy an assessment to cure the errors of the past boards of directors not to levy those assessments. Thus, the district court ordered that BHI and MCI were to pay the properly levied assessment from spring of 2012 forward, but not the assessments from before that time. In the judgment ultimately issued by the district court on this issue, BHI and MCI were ordered to pay $5,062.93.

Around six months later, the district court held a second bench trial, this time to consider Count II of the complaint and all of the issues in the counterclaim and third-party complaint. Following a two-day bench trial and a later hearing on the issue of damages, the district court determined that Beckman could not have breached his fiduciary duty to the SRCA and its members where the vote to approve the budget always was unanimous; the SRCA could not be vicariously liable for the alleged breaches of fiduciary duties of its board members and officers; the SRCA was required to indemnify Beckman under the terms of the bylaws; the SRCA made no agreement to pay for the well installed by Beckman, so did not have the responsibility to pay for it; the SRCA and Thomas Brown erred by filing liens that they knew to be improper, but did not commit slander of title where defendants failed to prove they suffered any damages therefrom; and that third-party defendants acted improperly in an array of manners, but had not committed the tort of breach of fiduciary duty, where defendants again failed to prove that they suffered damages.

The district court awarded Beckman $2,735.55 for his indemnification claim. The district court also granted defendants' motion for attorney fees and costs as a case evaluation sanction—the SRCA had rejected the proposed case evaluation award of $13,000 for it while defendant had accepted the award—pursuant to MCR 2.403(O), which the district court calculated to be $30,238. The SRCA and third-party defendants appealed as of right to the circuit court, which eventually affirmed all of the district court's decisions. This appeal followed.

## III. PAYMENT OF ASSESSMENTS

The SRCA argues that the circuit court erred in affirming the district court's decision to limit the SRCA's collection of pre-spring 2012 assessment, to certain "supplemental" assessments, and one portion of a regular assessment. We disagree in part and agree in part.

## A. STANDARD OF REVIEW

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239,

250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 251. This issue also requires US to consider and construe the terms of the master deed and the condominium bylaws, which were incorporated into the master deed. "A deed is a contract . . . and the proper interpretation of the language in a deed is therefore reviewed de novo on appeal . . . ." *In re Ruddell Estsate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). "All other questions of law, including issues of statutory interpretation, are reviewed de novo as well." *Id*. at 403.

## B. GENERAL LAW

Pursuant to MCL 559.153, "[t]he administration of a condominium project shall be governed by bylaws recorded as part of the master deed, or as provided in the master deed." "Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). "Condominium bylaws are interpreted according to the rules governing the interpretation of a contract." *Id*. "Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 547; 904 NW2d 192 (2017) (quotation marks omitted). "We enforce contracts according to their terms, as a corollary to the parties['] liberty to enter into a contract." *Kendzierski v Macomb Co*, 319 Mich App 278, 282; 901 NW2d 111 (2017), quoting *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). "Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "An unambiguous contractual provision reflects the parties' intent as a matter of law, and [i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (quotation marks omitted).

"Only when contractual language is ambiguous does its meaning become a question of fact." *Id*. "[A] contract is ambiguous when two provisions 'irreconcilably conflict with each other,' or 'when [a term] is equally susceptible to more than a single meaning . . . .' " *Id*., quoting *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). This Court and the trial court "may not create ambiguity when contract language is clear. Rather, [the courts] must honor the parties' contract, and not rewrite it." *Kendzierski*, 319 Mich App at 282 (internal quotation marks omitted).

## C. RELEVANT SECTIONS OF THE BYLAWS

The condominium bylaws in this case provide broad powers to the board, including the right, under Article IV, § 2(a), to "levy and collect assessments against and from the members of the [SRCA] and to use the proceeds therefrom for the purposes of the [SRCA] . . . ." Article V, § 4 provides greater detail regarding the board's power to levy assessments, establishing that the board "shall establish an *annual* budget in *advance for each fiscal year* for the Condominium, and the budget shall contain the Board's estimate of the funds required to *defray the expenses of administration for the forthcoming year . . . .*" (Emphasis added.) That same section, Article V,

§ 4, permits the board to include within the budget for a given year funds "for meeting any deficit in the common expense budget for any prior year." That section also contains a provision for curing shortages that might arise in the same year as the budget, allowing for additional assessments to be levied to account therefor. Additionally, Article V, § 5 allows the board to levy "special assessments" for "capital improvements or additions to the common elements exceeding $2,000 per year;" and to purchase or lease a unit for the SRCA after foreclosure or otherwise. The bylaws also provide a catchall provision for "special assessments," providing that the board can levy "assessments for any other appropriate purpose not elsewhere herein described." The language of Article V, § 5 is clear and unambiguous that such special assessments "shall not be levied without the prior approval of more than two-thirds (2/3) of all members in value and in number, which approval shall be granted only by a vote of the members called in accordance with the provisions of Article III hereof."

### D. PRE-SPRING 2012 ASSESSMENTS

The specific question presented is whether the district court properly determined that the SRCA board of directors did not have, or improperly exercised, the power to levy assessments contrary to a prior boards' decision not to levy those assessments.[2] The language of the bylaws with respect to assessments that we have been asked to review is unambiguous, and therefore, we must "construe and enforce the [terms] as written." *Holland*, 287 Mich App at 527. As discussed, there are only three types of assessments that the board can levy: regular, additional, and special. Article V, § 4 provides a description of those assessments that can be levied at the board's sole discretion: regular and additional assessments. The regular assessments must be for the coming year's proposed budget, but can include provisions to pay for previous year's deficiencies or to establish a fund to prepare for future emergencies or repairs. The regular assessments provide no grounds, however, for a board to specifically levy assessments against units that, according to the sole determination of the board, did not pay their fair share in the past. Importantly, although Article V, § 4 allows for the board to make up for shortages from previous years, there was no evidence provided in this case that the previous years had a shortage of funds, but only that units 11 and 13 did not pay their fair shares thereof. Thus, because the assessments sought to be levied by the board in this case were not part of the 2012 fiscal year's budget, they were not "regular" assessments.

Further, the proposed assessments were not "additional" assessments pursuant to Article V, § 4. By the plain and unambiguous language of that section, an additional assessment can

---

[2] Defendants provide a lengthy analysis of whether the master deed permits *any* assessments for incomplete units in light of the alleged ambiguity in the master deed and condominium bylaws and Delich's expressed intent. However, that issue is not before this Court on appeal because defendants have not raised it. Thus, the district court's decision establishing that the master deed required payment of assessments even on incomplete units will not be considered. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 683; 854 NW2d 489 (2014), citing *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006) ("[A]n appellee may not obtain a decision more favorable than that rendered below without filing a cross-appeal.").

only be levied when "the Board of Directors at any time determine[s], in its sole discretion, that the assessments levied are or may prove to be insufficient," to pay for a list of possible shortages in the budget. There was no evidence in this case that the assessments levied against units 11 and 13 for the months and years preceding spring of 2012 were to account for an eventual insufficiency in the proposed budget. Instead, those assessments were meant to cure errors in apportionment by previous boards of directors. Given that we must enforce the unambiguous terms of the bylaws, it is clear that the proposed assessments by the SRCA board of directors were not "additional" assessment pursuant to Article V, § 4. See *Tuscany Grove*, 311 Mich App at 393.

The SRCA, on appeal, provides a great deal of argument that its board of directors must have the power to cure errors of a prior board of directors in apportioning assessments allegedly in violation of the percentages of value in the master deed. However, we need not address the issue. It is entirely plausible that the board of directors has such power, but in the instant case, even if it did, it did not exercise the power according to the terms of the bylaws. Pursuant to Article V, § 5, the board can levy a special assessment "to meet other needs, requires or desires of the [SRCA], including, but not limited to . . . assessments for *any other appropriate purpose not elsewhere herein described*." (Emphasis added.) The range of possible assessments under that language is broad and potentially could encompass an ability to levy an assessment to cure apportionment errors by a previous board. Article V, § 5 also is clear, however, that any special assessment must be approved by a two-thirds vote of the SRCA membership. In other words, such a special assessment cannot be passed in the sole discretion of the board of directors. The record is clear that the members neither were invited to nor did vote on the issue of whether to levy an assessment against units 11 and 13 to cure errors of previous boards. Therefore, regardless of whether the SRCA has the inherent power to cure previous errors of apportionment of assessments by previous boards, by the plain and unambiguous language of Article V, § 5, the assessments levied were not proper and thus, not valid. See *Tuscany Grove*, 311 Mich App at 393.[3]

Because the board failed to exercise any power it might have had to levy a special assessment to cure the errors of past boards of directors, the circuit court properly affirmed the district court's decision to only allow the levying of regular assessments.

E. "SUPPLEMENTAL" ASSESSMENTS

The SRCA argues that the district court erred when it removed two "supplemental" assessments from the calculation of damages in the judgment after the first bench trial. As noted, there are three different types of assessment: regular, additional, and special. Regular and additional assessments can be done at the board's own discretion while special assessments require a two-thirds approval by the members. The challenged assessments for this issue were

---

[3] Given this conclusion, the SRCA's argument that it had the power to correct prior errors pursuant to MCL 450.2501(1), the condominium bylaws, and *Gordon Props, LLC v First Owners Ass'n of Forty Six Hundred*, 460 BR 681 (Bankr ED Va, 2011), is irrelevant because, even if the SRCA board of directors had such power, it was not exercised properly.

-6-

for attorney fees for the present litigation and the removal of a tree and grinding of a stump. The SRCA argues that it referred to those assessments as "supplemental" as a different form of the word "additional," as used in Article V, § 4 of the bylaws. However, the evidence admitted at trial fully supports the district court's determination that the term "supplemental" actually meant "special," as used in Article V, § 5 of the bylaws.

The directors' meeting minutes and members' meeting minutes on the day when the tree and stump removal assessment passed support this conclusion. In the minutes for the April 21, 2012 members' meeting, the assessment for the tree is referred to as a "special assessment." To wit, the minutes note that, "[d]ue to the necessity of scheduling the removal of the trees and stumps before May 1st, I am proposing a special assessment to cover the cost of $3,200." The minutes for that meeting contain no indication that the members voted on the proposed special assessment.

Meanwhile, in the directors' meeting minutes from that same day, the assessment for payment of tree and stump removal is referred to as a "supplemental," or as the SRCA now alleges an "additional" assessment. However, the directors' meeting minutes instead make clear that the board used the term "supplemental" to mean "special." In the most enlightening portion of the meeting minutes, the directors voted unanimously to adopt the following motion: "Should the supplemental Assessment for tree/stump removal have lacked sufficient vote, the Board hereby approved exact same amount, the supplemental assessment to be paid monthly [sic]." This clearly shows that the board of directors intended to approve the funds for the tree and stump removal even if the special assessment therefore failed. In light of this evidence, the district court's factual determination that the alleged "supplemental" assessments actually were "special" assessments was not clearly erroneous. See *Chelsea Investment Group*, 281 Mich App at 251.

As discussed, by the plain language of Article V, § 5 of the bylaws, the board of directors is not permitted to levy special assessments without the required membership vote. Its attempt to do so, even in light of the failure to attain that membership vote is dispositive. The "supplemental" assessments for attorney fees and tree and stump removal merely were an attempt to pass "special" assessments without submitting it to the members. Consequently, they were not valid under the bylaws and the district court did not err in removing them from the calculation of MCI's and BHI's owed assessments. MCL 559.153.

## F. REGULAR ASSESSMENT

The third assessment was for attorney fees, $5,000, for litigation in the present case, which was passed as part of the budget during the regular meeting for 2014. In this instance, the SRCA is correct. The bylaws, in Article IV, § 2, provided broad powers to the board of directors, stating that the board "shall have all powers and duties necessary for the administration of the affairs of the Condominium and may do all things which are not prohibited by law or the Condominium Documents or required thereby to be done by the members." The bylaws also provided, in Article IV, § 2, a non-exhaustive list of powers specifically attributed to the board, including subsection (b): "[t]o levy and collect assessments against and from the members of the [SRCA] and to use the proceeds therefrom for the purposes of the [SRCA];" in subsection (e): "[t]o contract for and employ, and to discharge, persons or business entities to assist in the

management, operation, maintenance and administration of the Condominium;" and in subsection (k): "[t]o enforce the provisions of the Master Deed and Bylaws of the Condominium. . . . and to sue on behalf of the Condominium or the members and to assert, defend or settle claims on behalf of the members with respect to the Condominium[.]"

Considering those powers in tandem, the board was permitted to sue on behalf of the SRCA and its members, "to contract for and employ" an attorney to do so, and to "levy and collect assessments" to pay for it. Article V, § 4, meanwhile, provides that the board is permitted to levy "regular" assessments to "defray the expenses of administration for the forthcoming year, as those items are defined by these Bylaws, and all other common expenses." As noted, the pertinent subsections in Article IV, § 2 includes the hiring of an attorney to sue on behalf of the SRCA as an "expense[] of administration," or some "other common expense[]." Consequently, levying such an assessment was permitted under the bylaws and we must remand to the district court to include unit 11's and 13's share of that assessment in the judgment.

## IV. BREACH OF FIDUCIARY DUTY & INDEMNIFICATION

The SRCA argues that the circuit court erred in affirming the district court's decision finding that Beckman did not breach his fiduciary duty and was entitled to indemnification under the terms of the bylaws. We disagree.

## A. STANDARD OF REVIEW & GENERAL LAW

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Investment Group*, 288 Mich App at 250. A master deed and its attached bylaws are "a contract . . . and the proper interpretation of the language in a deed is therefore reviewed de novo on appeal . . . ." *In re Ruddell Estsate*, 286 Mich App at 402-403. "All other questions of law, including issues of statutory interpretation, are reviewed de novo as well." *Id*. at 403.

A claim for breach of a fiduciary duty "sounds in tort[.]" *Miller v Magline, Inc*, 76 Mich App 284, 313; 256 NW2d 761 (1977); see also *Urbain v Beierling*, 301 Mich App 114, 131; 835 NW2d 455 (2013). "The elements of an action for damages arising out of a tortious injury include: (1) a legal duty, (2) a breach of the duty, (3) a causal relationship, and (4) damages." *Lumley v Bd of Regents for Univ of Mich*, 215 Mich App 125, 130; 544 NW2d 692 (1996). "Proof of causation requires both cause in fact and legal, or proximate, cause." *Haliw*, 464 Mich at 310. The cause in fact prong of causation "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *O'Neal v St John Hosp & Medical Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010) (internal citations and quotations omitted). "While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). More specifically, plaintiff's "evidence is sufficient if it establishes a logical sequence of cause and effect." *Skinner v Square D Co*, 445 Mich 153, 159-160; 516 NW2d 475 (1994). "There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess, although legitimate inferences may be drawn from established facts." *Daigneau v Young*, 349 Mich 632, 636; 85 NW2d 88 (1957). "An explanation that is consistent

-8-

with known facts but not deducible from them is impermissible conjecture." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). "And while the evidence need not negate all other possible causes, this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Craig*, 471 Mich at 87-88 (internal citations and quotations omitted).

## B. BREACH OF FIDUCIARY DUTY

The complaint only makes one allegation of how Beckman allegedly breached his fiduciary duty: "By way of his position as President of the SRCA and via his control over the invoicing of said assessments, BECKMAN knowingly benefitted Units 11 and 13, in which he held a financial interest, to the detriment of the SRCA and its member owners." As noted, however, pursuant to MCL 559.153, "[t]he administration of a condominium project shall be governed by bylaws recorded as part of the master deed, or as provided in the master deed." According to Article V, § 4 of the bylaws, the board of directors, and not the president, "shall allocate and assess all such common charges against all members in accordance with the percentage of value allocated to each unit by the Master Deed . . . ." Considering that clause of the bylaws, Beckman, during his time as president of the SRCA, was not responsible for assessing the members, so there is nothing that he did in his capacity as president that would have caused the alleged damages to SRCA. By the plain and unambiguous language of Article V, § 4, it was the board of directors—which voted unanimously to approve the budget each year in question—that was the "but for" cause of the SRCA's alleged suffered harms. MCL 559.153; see also *Craig*, 471 Mich at 87-88. Therefore, because Beckman, in his capacity as president, could not have been a cause of the SRCA's injury, the district court did not err in determining that Beckman did not breach any fiduciary duty. See *Urbain*, 301 Mich App 131; see also *Lumley*, 215 Mich App at 130; see also *Miller*, 76 Mich App at 313.

Although the complaint does not include an allegation that Beckman also breached a duty during his time as a director for the SRCA's board of directors, the SRCA made that argument at trial and now on appeal. Once again, however, the district court properly determined that the SRCA has not provided sufficient proof of causation. As just discussed, the four-member board of directors establishes a budget and issues assessments based on the percentages in the master deed. It is undisputed that at all times that Beckman served on the board, the vote to approve the budget was unanimous.

Pursuant to Article IV, § 1 of the bylaws, a majority vote of the board members at any meeting where a quorum is present (a majority of all of the board) is an action of the entire board. According to that rule, a quorum was present when three or four board members (a majority) attended a meeting, and only a majority vote was required to pass any and all budgets. Thus, even if a meeting only had the bare minimum number of directors present to form a quorum (three members), two votes in favor of the budget would have been enough to qualify as an action of the board. When all of the board members were present at a given meeting, three votes would have been satisfactory. Therefore, even if Beckman voted no on the budget at every meeting, the exact budget that indicated units 11 and 13 were not to be assessed would still have passed by a majority vote. Consequently, the SRCA could not possibly prove that Beckman's vote, as a sole director, was a cause-in-fact of the alleged injuries suffered by the SRCA. Even if Beckman had voted as the SRCA alleges that he should have voted, the SRCA still would have

suffered the same damages. Due to the SRCA's inability to prove causation, the district court properly found that Beckman had not committed the tort of breach of fiduciary duty. See *Craig*, 471 Mich at 87-88; see also *Urbain*, 301 Mich App 131; see also *Lumley*, 215 Mich App at 130; see also *Miller*, 76 Mich App at 313.

## C. INDEMNIFICATION

The SRCA next argues that even if Beckman did not breach a fiduciary duty, it still was improper for the district court to find that he should be indemnified. Pursuant to MCL 559.154(6), "[t]he bylaws shall provide an indemnification clause for the board of directors of the association of co-owners." Although not required by that statute, the condominium bylaws here, pursuant to Article IV, § 6 provide for indemnification of both directors and officers. To wit, the relevant clause states:

> The [SRCA] shall indemnify every [SRCA] director and officer against all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him as a consequence of his being made a party to or being threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of his being or having been a director or officer of the [SRCA], except in such cases wherein he is adjudged guilty of willful and wanton misconduct or gross negligence in the performance of his duties or adjudged to have not acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the [SRCA] and its members, and with respect to any criminal action or proceeding, he is adjudged to have had no reasonable cause to believe that his conduct was unlawful . . . .

The board of directors in 2013 voted to *not* indemnify Beckman, specifically adjudging that he committed "willful and wanton misconduct or gross negligence in the performance of his duties," and that he had "not acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the [SRCA] and its members . . . ."

The district court considered the evidence and determined that Beckman had not acted willfully, wantonly, grossly negligent, or in bad faith. In reaching that conclusion, the district court noted that Delich and Beckman both had testified that they believed the master deed and condominium bylaws did not require an incomplete unit to pay assessments. Further, the district court noted that, considering the bylaws require that *all* board members also be condominium co-owners, it is not possible for a board member to not have some financial interest in the assessment of fees. By the very nature of the condominium bylaws, all board members will have to, in some way, vote to levy assessments against their own units. The district court was convinced by Beckman's evidence that, even though the district court determined that Beckman misunderstood the terms of the master deed and bylaws, his misunderstanding was not willful and wanton misconduct, gross negligence, or evidence of bad faith. Instead, it was a good faith misreading of the condominium documents. The district court's reasoning also was supported by Delich's testimony that he read the documents similarly, and the fact that for six years, the board of directors, who undoubtedly were paying more than their fair share of the budget, also agreed to Beckman's eventually-established misunderstanding of the master deed and bylaws. Since the

-10-

district court relied on admissible evidence and testimony produced at trial to reach its decision, we are not "left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group*, 281 Mich App at 251. Thus, the decision was not clearly erroneous. See *id*.

The SRCA counters that its resolution of non-indemnification was binding under the Nonprofit Corporation Act, MCL 450.2101 *et seq*. Specifically, the SRCA cites MCL 450.2564a(1), which provides that a nonprofit corporation "shall indemnify a director [or] officer . . . only if authorized in the specific case based on a determination that indemnification . . . is proper in the circumstances because that person has met the applicable standard of conduct" established in the statutory scheme. The SRCA reasons that pursuant to that statute, it was *required* to make the "determination" of whether Beckman fulfilled the standard of conduct necessary to be entitled to indemnification. *Id*. Thus, the SRCA argues, since it did not make such a determination, it is not obligated to indemnify Beckman.

The SRCA's argument runs counter to MCL 450.2564a(1)(a), which provides that the determination referenced, *supra*, must be "[b]y a majority vote of a quorum of the board that consists of directors *who are not parties or threatened to be made parties to the action, suit, or proceeding*." (Emphasis added.) At the time the resolution passed, on May 30, 2013, defendants had already filed their third-party complaint against Thomas Brown, Jane Brown, and Paul Busch. Thus, contrary to MCL 450.2564a(1)(a), those three individuals signed the resolution of non-indemnification. Therefore, the resolution was improper pursuant to MCL 450.2564a(1)(a) and therefore is ineffective. *Id*. Consequently, the district court did not clearly err or violate the Nonprofit Corporation Act by requiring that the SRCA indemnify Beckman.[4] *Id*.

## V. ATTORNEY FEES & COSTS

The SRCA argues that the circuit court erred in affirming the district court's decision not to award the SRCA its attorney fees under the terms of the bylaws and the Condominium Act, MCL 559.101 *et seq*., and to grant defendants' motion for attorney fees as a case evaluation sanction. We disagree.

## A. STANDARD OF REVIEW

---

[4] The SRCA also argues that the district court and circuit court "ignored" its argument that Beckman was not entitled to indemnification where he also failed to have the SRCA's finances audited by an independent accountant on a yearly basis. The SRCA appears to base this argument on a statement by Beckman during a hearing on damages. The district court, meanwhile, had already decided Beckman's entitlement to indemnification based on the evidence admitted *at trial*. If the SRCA believed that Beckman was not entitled to indemnification because he failed to audit the SRCA's finances, it was required to introduce that evidence at the trial—not months later at a hearing regarding damages. The SRCA provides no legal analysis regarding how testimony that could have been elicited at trial, but was not, would require the district court to revisit its decision after a hearing on damages, and thus has abandoned the issue on appeal.

"This issue involves interpretation of a court rule, which, like matters of statutory interpretation, is a question of law that we review de novo." *Marketos v American Employers Ins Co*, 465 Mich 407, 412; 633 NW2d 371 (2001). "A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). In cases involving the Condominium Act, "[t]he decision to award attorney fees, and the determination of the reasonableness of the fees requested, is within the discretion of the trial court." *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). " '[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes.' " *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018), quoting *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007) (alteration in *Sanders*). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

## B. THE SRCA'S ENTITLEMENT TO ATTORNEY FEES UNDER THE BYLAWS

"As a general rule, an award of attorney fees as an element of costs or damages is prohibited unless it is expressly authorized by statute or court rule." *Windemere Commons*, 269 Mich App at 683, citing *Rafferty v Markovitz*, 461 Mich 265, 271; 602 NW2d 367 (1999). Under the Condominium Act, pursuant to MCL 559.206(1)(b), "[i]n a proceeding arising because of an alleged default by a co-owner, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent the condominium documents expressly so provide." Article XII, § 1(b) of the bylaws contains a similarly worded provision that allows the SRCA to collect "the costs of the proceedings and such reasonable attorneys' fees . . . as may be determined by the Court . . . ." Like MCL 559.206(1)(b), the collection of the attorney fees under the terms of the bylaws is contingent upon the SRCA being "successful" in the litigation.

Thus, pursuant to the plain language of the statute and the bylaws, the SRCA was entitled to the collection of attorney fees if it was successful. Neither the Condominium Act nor the bylaws in this case define the term "successful." With respect to the Condominium Act, "[b]ecause our goal is to glean legislative intent from the plain meaning of statutory language . . . the dictionary is our first point of reference to determine the term's significance . . . ." *In re Estate of Erwin*, 503 Mich 1, 9-10; 921 NW2d 308 (2018). Similarly, for the bylaws, "[w]e turn to [the undefined terms'] dictionary definitions to ascertain the plain and ordinary meaning of these terms as they would appear to a reader of the contract." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 294; 778 NW2d 275 (2009). Pursuant to *Merriam-Webster's Collegiate Dictionary* (11th ed), "successful" is defined as "resulting or terminating in success" or "gaining or having gained success." "Success" meanwhile, is defined as, in pertinent part, a "favorable or desired outcome." *Id*. Therefore, in order to be deemed "successful," the SRCA's litigation must have resulted in a favorable or desired outcome. *Id*.

In the present litigation, the SRCA was seeking assessments from both before and after its board of directors determined that units 11 and 13 should have been paying their apportioned share of the condominium's expenses. Its primary argument was that the master deed was unambiguous, binding, and determinative in that respect, and that the SRCA had the ability to collect assessments from those units dating back to 2006. When its complaint was filed on

December 11, 2012, the SRCA sought $11,853.90 in past due assessments, as well as those that were levied and eventually were not paid after September of 2012. The complaint did not seek declaratory relief.

As discussed, *supra*, the attempt by the SRCA's board of directors to levy the allegedly past due assessments was improper pursuant to the condominium bylaws. The district court also held that the master deed did allow for collection of assessments that properly were levied by the board of directors according to the terms of the master deed and bylaws. Therefore, the SRCA achieved success in that respect. But, as noted, when considering Count I of the complaint at the time it was filed, the SRCA only was five-percent successful with respect to the monetary award it was seeking. Therefore, considering that the SRCA only achieved five percent of the sought fees, it is entirely reasonable for the lower court to determine that the SRCA's litigation did not result in a desired outcome. Thus, under the terms of the bylaws and the Condominium Act, the SRCA's litigation was not "successful." MCL 559.206(1)(b). Consequently, the district court's decision not to award attorney fees under the bylaws and Condominium Act was not an abuse of discretion. See *Windemere Commons*, 269 Mich App at 683.[5]

## C. CASE EVALUATION SANCTIONS

"A court may award costs and attorney fees only if specifically authorized by a statute, a court rule, or a recognized exception to the American rule (which mandates that a litigant be responsible for his or her own attorney fees)." *Hackel v Macomb Co Comm*, 298 Mich App 311, 334; 826 NW2d 753 (2012). An exception to the American rule is MCR 2.403(O), which "expressly authorizes recovery of 'a reasonable attorney fee' and 'costs,' " *Haliw v Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005), quoting MCR 2.403(O)(6), in situations where "a party has rejected an evaluation and the action proceeds to [a] verdict . . . [that] is [not] more favorable to the rejecting party than the case evaluation," MCR 2.403(O)(1). A verdict is considered "more favorable" to the rejecting party "if it is more than 10 percent above the evaluation . . . ." MCR 2.403(O)(3).

The case evaluation panel determined that the SRCA's case was worth $13,000, while defendants' case was worth less than $7,000. The SRCA rejected the award after unsuccessfully challenging the alleged bias of one of the evaluators. Defendants accepted the award. The case eventually went to a verdict where the SRCA was awarded $5,062.93, after the final additions to the judgment.

---

[5] Given this conclusion, the SRCA's alternative argument—that it never was provided an opportunity to prove its attorney fees as damages for Count I of the complaint—has been rendered moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks omitted) ("[A]s a general rule, this Court will not entertain moot issues or decide moot cases," such as those "in which a judgment cannot have any practical legal effect upon a then existing controversy."). Because the district court properly determined that the SRCA was not entitled to any attorney fees, considering that its litigation was not "successful" under the Condominium Act and condominium bylaws, deciding that the SRCA was denied an opportunity to present proof of damage "cannot have any practical legal effect upon" the outcome of this case. *Id*.

The SRCA first argues that the district court erred by failing to set aside the case evaluation where it violated the requirements of MCR 2.403(K)(2), which requires a case evaluation to "include a separate award as to each plaintiff's claims against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action." As correctly noted by the district court, however, the SRCA did not raise this challenge until December 21, 2015, more than two years after the case evaluation panel issued its recommendation.[6] The relevant court rule required the SRCA to accept or reject the evaluation "within 28 days after service of the panel's evaluation." MCR 2.403(L)(1). Despite issuing a challenge to the case evaluation based on the alleged bias of an evaluator, the SRCA did not immediately challenge the alleged violation of MCR 2.403(K)(2). When the SRCA lost its challenge based on the alleged bias of the evaluator, it then rejected the case evaluation award pursuant to MCR 2.403(L)(1).

As noted, the SRCA did not challenge the case evaluation on the grounds argued in this appeal until two years later. The district court did not abuse its discretion when it determined that the SRCA had impliedly waived its possible challenge to the case evaluation by failing to include the argument within its timely challenge to the award and then continuing with the proceedings by rejecting the award. See *Reed Estate v Reed*, 293 Mich App 168, 177; 810 NW2d 284 (2011). The SRCA's limited challenge to the case evaluation and subsequent rejection of it, was "[a] waiver evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id*. (quotation marks omitted).[7]

Next, the SRCA argues that the district court miscalculated the value of the judgment in the SRCA's favor. First, the SRCA argues that it would have achieved a result ten-percent better than $13,000 if the district court had included attorney fees and costs in the calculation of damages, as it was required to due pursuant to MCL 559.206(b) and the condominium bylaws. However, as discussed, *supra*, the district court's decision not to award attorney fees under the circumstances of this case was not an abuse of discretion. Therefore, the district court also did not err in refusing to include those alleged damages when determining the prevailing party pursuant to MCR 2.403(O).

Finally, the SRCA argues that the district court failed to consider that it also had achieved the equitable result of requiring BHI and MCI to pay their share of the assessments in the future.

---

[6] The SRCA did challenge the case evaluation sooner, but that challenge was limited to the allegation that a panel member was a biased evaluator. The SRCA does not make that contention in this appeal.

[7] Furthermore, even if the case evaluation form used in this case violated MCR 2.403(K)(2), there is no possible way that the SRCA could somehow have retroactively become the prevailing party pursuant to MCR 2.403(O) by curing that error. To wit, presuming the award was supposed to be split between BHI and MCI, there is no possibility that curing that error would somehow result in around $5,000 being 10 percent more than $13,000. Thus, even if the case evaluation award had an error, the SRCA did not suffer any prejudice from that error, and therefore, the SRCA has not provided this Court with any reason to reverse. MCR 2.613(A).

The SRCA asserts that this equitable relief should have been given a value pursuant to MCR 2.403(O)(5), but the SRCA's argument is flawed because, as is clear from its complaint, it did not seek equitable relief, and moreover, the district court did not grant equitable relief. Thus, MCR 2.403(O)(5) is inapplicable.

Given the foregoing conclusions, the district court did not err in determining that defendants were the prevailing parties pursuant to MCR 2.403(O) and granting their motion for attorney fees and costs.[8]

## VI.  SLANDER OF TITLE & BREACH OF FIDUCIARY DUTY

The SRCA and the third-party defendants argue that the circuit court erred in affirming the district court judgment that Thomas Brown and the SRCA committed slander of title and that third-party defendants committed breaches of their fiduciary duties to the third-party plaintiffs. We refuse to consider these issues because the SRCA and third-party defendants were not aggrieved.

The Michigan Supreme Court has held that, "[i]n appeals . . . [there is] a requirement that the party seeking appellate relief be an aggrieved party . . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006) (quotation marks omitted). Therefore, "[t]o have standing to appeal means that a person must be 'aggrieved' by a lower body's decision." *Rymal v Baergen*, 262 Mich App 274, 318; 686 NW2d 241 (2004) (quotation marks omitted). "This Court has defined the term 'aggrieved party' as one whose legal right is invaded by an action, or whose pecuniary interest is directly or adversely affected by a judgment or order." *Dep't of Consumer Indus Servs v Shah*, 236 Mich App 381, 385; 600 NW2d 406 (1999) (quotation marks omitted).

"In Michigan, slander of title claims have both a common-law and statutory basis. To establish either, a claimant must show falsity, malice, and special damages." *Anton, Sowerby & Assoc v Mr. C's Lake Orion, LLC*, 309 Mich App 535, 546; 872 NW2d 699 (2015). A claim for breach of a fiduciary duty "sounds in tort[.]" *Miller*, 76 Mich App at 313; see also *Urbain*, 301 Mich App at 131. "The elements of an action for damages arising out of a tortious injury include: (1) a legal duty, (2) a breach of the duty, (3) a causal relationship, and (4) damages." *Lumley*, 215 Mich App at 130. Thus, proof of damages is a necessary element for any tort claim, including one for breach of a fiduciary duty. See *In re Bradley Estate*, 494 Mich 367, 392; 835 NW2d 545 (2013); see also *Urbain*, 301 Mich App at 131; see also *Miller*, 76 Mich App at 313.

The district courts opinions, judgments, and orders were clear that, while the court found that third-party defendants breached some fiduciary duties and that Thomas Brown and the SRCA acted wrongfully in recording the sworn notices of liens, defendants failed to prove that

---

[8] Our conclusion regarding the regular assessment for attorney fees that should have been added to the judgment as discussed, *supra*, does not change our opinion regarding whether the SRCA was "successful" under the terms of the Condominium Act or the bylaws, or whether defendants were the prevailing party pursuant to MCR 2.403(O).

they suffered damages.  Because damages are an element to both of the challenged claims, the district court's decision was that defendants/third-party plaintiffs suffered no damages, and consequently, did not have a cause of action for their slander of title or breach of fiduciary duty claims. *Anton, Sowerby & Assoc*, 309 Mich App at 546; see also *Urbain*, 301 Mich App at 131; see also *Miller*, 76 Mich App at 313.  Thus, because the SRCA and third-party defendants were successful before the district and circuit courts, they have not been aggrieved, and do not have standing to bring these issues on appeal. *Federated Ins Co*, 475 Mich at 290-292.

## VII.  CONCLUSION

We reverse with respect to section III(F) of this opinion, affirm in all other respects, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan